New York County.—HON. D. C. CALVIN, Surrogate.—March, 1877.

## Renholm v. The Public Administrator

*In the matter of the Estate of* Maria Renholm, *otherwise* Meyer, *deceased.*

For the purposes of establishing a right to administer, a marriage with the deceased may be proved by evidence of cohabitation, declarations, and repute.

Evidence of the declaration of the deceased that she was not married, is not necessarily inconsistent therewith, for it may have been referred to ceremonial marriage.

Nor is evidence that the deceased woman had deposited money in her maiden name, where she had previously been married to another.

Petition for letters of administration upon the estate of Maria Renholm, otherwise Meyer, deceased.

Andrew Renholm filed his petition setting forth that he was the husband of the deceased, who died intestate, in New York, the 19th December, 1876, and that she died possessed of certain personal property in that city, which did not exceed $1,300, and that she left her surviving no next of kin.

The public administrator appeared and answered, denying that the petitioner was the husband of the intestate, and applied for letters of administration, on the ground that the intestate left no next of kin.

The matter was referred to Cornelius Minor, Esq., to take and report testimony as to the marriage of the

petitioner with the deceased; and the referee filed his report with the testimony annexed. This report stated that, though by the order of reference he was not directed to determine the matter in controversy, or give his opinion upon the case, yet as the respective counsel summed up the case before him, he appends his opinion. The petitioner did not claim that he was ceremonially married to deceased, but that eight days after her former husband's death, he commenced to cohabit with her; and gave testimony that the deceased called him her husband, and he called her his wife. On behalf of the public administrator, testimony was given that the deceased declared, during her cohabitation with the petitioner, that she was not married, and would not marry again : that shortly before her death, she deposited money in the savings bank, in the name of Meyer, and that the petitioner, after her death, admitted that he was not married, and that she, at any time, could have left him, and he, her, and the other could have married without violation of the law. Though the testimony was conflicting, the referee was of the opinion that the weight of testimony was against any marriage by verbal agreement of the parties, or holding themselves out as husband and wife; and that it would be against sound morals to uphold the connection, as constituting a legal marriage, and that the petition should be dismissed, and letters granted to the public administrator.

    Mr. Rogers, *for petitioner.*

    L. H. Arnold, *for public administrator.*

The Surrogate.—An examination of the testimony in this case, but for the conclusiorea chensd by the referee, who had the opportunity to see, and could best judge of the credibility of the witnesses, would leave

the matter in very serious doubt, whether or not there was a verbal agreement between the husband and the intestate, to live together as man and wife. The law is well settled in this state, that a marriage is complete, if there be a full, free, and mutual consent between parties capable of contracting, though not followed by cohabitation. (*Jackson* v. *Winne*, 7 *Wend.*, 47.) A marriage may be inferred in ordinary cases, from cohabitation and acknowledgment, and no formal solemnization is requisite. (*Clayton* v. *Wardell*, 4 *N. Y.*, 230; *O'Gara* v. *Eisenlohr*, 38 *Id.*, 296; *Christie* v. *Clark*, 45 *Barb.*, 529; *Rockwell* v. *Tunicliff*, 62 *Id.*, 408; *Van Tuyl* v. *Van Tuyl*, 57 *Id.*, 235.)

In this case, there is considerable evidence that the parties cohabited together as man and wife, calling each other such, and that they spoke to others of themselves as such; and while there is no evidence of an actual agreement to live together as man and wife, yet their conduct was sufficient to imply and establish that relation. The only question to be considered is whether that presumption is overcome by the testimony adduced by the public administrator. This testimony seems to be confined to a statement of the deceased, that she was never married, which doubtless referred to a formal ceremonial of marriage, and might be entirely consistent with an agreement to live as man and wife. The only reliable evidence that she did not regard their relation, or any agreement between them, as creating the marriage relation, is to be found in the use of her maiden name, for the purpose of depositing money in the savings bank; and yet, even that was obviously untrue, from the evidence given, for she was a widow, and legitimately bore the name of her first husband, if it had not been changed by the relation between the petitioner and herself.

The case of *Van Tuyl* v. *Van Tuyl*, above cited, was an action for partition, and the defendant claimed to be the widow of the deceased, Taylor, and entitled to dower, and that her children were entitled as heirs at law; and the proof showed that there was no solemnization of marriage between them; that the alleged wife consented, under persuasion, to receive the deceased as her husband; and they secretly cohabited together; and that she afterwards left his house, and went to live elsewhere, in a house furnished by Mr. Taylor, where she resided under an assumed name; that she had introduced Mr. Taylor as her husband, and he recognized her as his wife; and that she assumed the name for the purpose of keeping their relation from his family. These facts were held to constitute a marriage.

Suppose that the result of the cohabitation between petitioner and the intestate, had resulted in the birth of children; could it be claimed that they, under the circumstances of this case, would be adjudged illegitimate? Or suppose the petitioner, having ample means, after cohabiting with the deceased for a series of years, as man and wife, had abandoned the deceased; would there be any reasonable doubt that he might be made responsible for her support?

I think it a very serious question whether good morals would be better promoted by sanctioning the cohabitation of the parties in question, and attaching to it the liabilities of the marital relations, than by holding that such cohabitation was meretricious, and creating no marital obligation.

The petitioner, as the wife of the decedent, is entitled to letters of administration upon the estate.

Decree accordingly.