was evidently an oversight. The court minutes and papers on file disclose no reason for the decree not having been signed.

It is now insisted by the estate that it is the duty of the present surrogate to sign said decree, and that said estate was finally and judicially settled as of the date of said decree, and that objections to the account cannot now be heard, all interested parties having been precluded by said decree, and that the court can afford no relief, because of laches and lack of jurisdiction. Section 2481 of the Code of Civil Procedure gives the surrogate power, under subdivision 9:

"To complete, and certify and sign in his own name, adding to his signature the date of so doing, all records or papers, left uncompleted or unsigned by any of his predecessors."

In Matter of Martinhoff, 4 Redf. Sur. 286, the court held:

"The surrogate has the power to take up the probate of a will at the point where it was left by his predecessor in office, complete the proofs, and then decide the question at issue upon the whole evidence, including that taken before his predecessor."

The parties now in court, seeking to attack the account filed in 1906, were then in court and represented by an attorney, who consented to the decree as filed. A decree having been ordered and filed at the time of said accounting in 1906, I think it is clearly my duty under the law to supply the omission of my predecessor's signature by signing it.

Said petition by Frank Baird, for an accounting, under date of June 9, 1911, and all proceedings in connection therewith, are dismissed; and the objections filed by said Catharine E. Baird are overruled, on the ground that the court has no power to entertain them, having been precluded by a former accounting and decree herein.

Decreed accordingly.

---

(74 Misc. Rep. 11.)

In re SMITH'S ESTATE.

(Surrogate's Court, St. Lawrence County. October, 1911.)

1. MARRIAGE (§ 14*)—COMMON-LAW MARRIAGE—VALIDITY.
    While Domestic Relations Law (Laws 1896, c. 272) § 19, added by Laws 1901, c. 339, providing that no marriage claimed to have been contracted on or after the 1st day of January, 1902, otherwise than as provided in the statute, should be valid for any purpose whatever, was in force, a common-law marriage by oral contract was not valid; but in the absence of such provision such a marriage was valid, notwithstanding particular directions of the domestic relations law as to the solemnization of marriage.
    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 5; Dec. Dig. § 14.*]

2. MARRIAGE (§ 14*)—COMMON-LAW MARRIAGE—VALIDITY.
    On a repeal of Domestic Relations Law (Laws 1896, c. 272) § 19, added by Laws 1901, c. 339, § 6, providing that no marriage contracted otherwise than as provided in the statute shall be valid, by Laws 1907, c. 742, there was no statutory declaration that a marriage contracted oth-

erwise than as prescribed by the domestic relations law should be invalid, and the absolute inhibition of common-law marriages was removed

[Ed. Note.—For other cases, see Marriage, Dec. Dig. § 14.*]

**3. MARRIAGE (§ 13*)—COMMON-LAW MARRIAGE—VALIDITY.**

In a proceeding by one claiming to be the widow of intestate for revocation of letters of administration granted to his father, where it appears that the relations between decedent and applicant began while Domestic Relations Law (Laws 1896, c. 272) § 19, added by Laws 1901, c. 339, § 6, was in force, and continued until decedent's death in 1909, that they wished to be considered husband and wife, kept house in a respectable neighborhood, and had children, but that there was no actual contract of marriage, and that their statements to the contrary to third persons were made merely to deceive, the proceeding will be dismissed.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 4; Dec. Dig. § 13.*]

In the matter of the estate of Arthur F. Smith, deceased. Application for revocation of letters of administration. Dismissed.

Breen & Breen (E. C. Emerson, of counsel), for petitioner.
Abbott & Dolan (Thomas Spratt, of counsel), for respondent.

HERRIMAN, S. Arthur F. Smith died intestate in the town of Gouverneur, in the county of St. Lawrence, on the 8th day of November, 1909. On the 20th day of November, 1909, application was made by his father, Isaac J. Smith, for letters of administration upon the estate; the petition alleging that the decedent was a resident of this county at the time of his death and that he left the petitioner as his only next of kin. Letters of administration were thereupon issued to the father.

[1] The present proceeding is an application by a petitioner, calling herself Jessie I. Smith and claiming to be the widow of the decedent, for the revocation of the letters issued to the father, upon the ground that she, as widow, is first entitled to administer the estate, and also upon the ground that the decedent was not a resident of the county of St. Lawrence, but resided in the county of Jefferson, at the time of his death. It is not claimed by the petitioner here that she and the decedent were married by any legal or religious ceremony; and the respondent objected to any evidence tending to show a marriage by oral contract or "common-law marriage," upon the ground that such a marriage is no longer recognized by our law, but is forbidden by the domestic relations law. This objection seems to me to be untenable.

Prior to the enactment of chapter 339 of the Laws of 1901 there was no doubt as to the validity of a "common-law marriage," so-called. By this chapter the domestic relations law was amended in several important particulars, and a new section, numbered 19, was added, which provided that:

"No marriage claimed to have been contracted on or after the first day of January, nineteen hundred and two, within this state, otherwise than in this article provided, shall be valid for any purpose whatever."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

While this provision was in force, a "common-law marriage" by oral contract was impossible; but, without this provision, such a marriage would be valid, notwithstanding the particular directions for the solemnization of marriage contained in the statute. Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826. In this case the court said:

"No doubt a statute may take away a common-law right; but there is always a presumption that the Legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity."

[2] By chapter 742 of the Laws of 1907, taking effect January 1, 1908, section 19 of the domestic relations law was repealed, leaving that law without any declaration that a marriage contracted otherwise than as prescribed should be invalid, and showing that the Legislature intended to remove the absolute inhibition of such marriages.

[3] The next question is: Were this man and this woman husband and wife under the law? Their relations began while section 19 of the domestic relations law was in force, but continued down to the time of the decedent's death. It is apparent from the evidence that they wished to be considered as husband and wife. They kept house in a respectable neighborhood. Two children were born to them—one in 1906, the other in 1908. In August, 1907, they stated to the witnesses, Mr. and Mrs. Austin, that they were then married, and deceased stated "that he had papers to show it." There is no pretense that the latter part of this statement is true; but his making it would tend to show that he considered such "papers" necessary. In the same month he stated to the witness Spencer that Jessie was his wife. In several instances he stated to real estate owners and agents, upon renting a house, that the petitioner was his wife. But these and the other similar acts and declarations shown by the evidence are competent only as tending to sustain the inference that there was really an actual contract of marriage between the petitioner and the decedent. A man and woman may deceive their relatives, friends, neighbors, and the public generally, into the belief that they are husband and wife, but they must not themselves be deceived; and the force of declarations and conduct from which a marriage might be inferred is entirely destroyed by proof that the man and woman, in the privacy of their own hearts, did not consider that a marriage had been had. Such proof seems to me to have been made in this case.

At the time of the birth of their first child, the petitioner told Mrs. Rose Austin, an aunt, that Arthur F. Smith was the father of this

child, and that he had agreed to marry her. She said that she was not married at that time. Their relations being then meretricious, it is presumed that they continued to be of that character. Shortly after the death of Arthur F. Smith, the petitioner declared, on several occasions, that she and Arthur were not married; and on one of these occasions she said:

"I, on my bended knees, pleaded with Arthur, only last week, to marry me; but he has put it off too long, too long."

It is apparent from the whole testimony that there was no actual contract of marriage between the petitioner and Arthur F. Smith, and their statements to the contrary to third persons were made merely to deceive. Under these circumstances, I am compelled to hold that the petitioner is not the widow of the decedent.

As to the residence of Arthur F. Smith at the time of his death, the evidence fully justifies the holding that he was a resident of the county of St. Lawrence at that time.

The petition is dismissed. Proposed findings and decree may be submitted for settlement on two days' notice. Counsel may make such suggestions as they see fit in regard to the costs of the proceeding upon the settlement of the decree.

Decreed accordingly.