## In re HINMAN.

(Supreme Court, Appellate Division, Third Department.   November 15, 1911.)

1. MARRIAGE (§ 40*)—PRESUMPTION—REBUTTAL.
    The presumption of marriage, arising from cohabitation apparently matrimonial, is one of the strongest, and can only be rebutted by strong and conclusive evidence.
    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 61; Dec. Dig. § 40.*]

2. MARRIAGE (§ 40*)—PRESUMPTIONS—NATURE OF PRESUMPTIONS.
    The presumption of the existence of a valid marriage, arising from cohabitation apparently matrimonial, does not involve an assumption that the marriage took place at any particular place or time or in any particular manner, but merely that a legal marriage existed.
    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 61; Dec. Dig. § 40.*]

3. MARRIAGE (§ 40*)—PRESUMPTIONS—EFFECT OF STATUTE.
    Domestic Relations Law (Laws 1896, c. 272) § 19, as added by Laws 1901, c. 339, § 6, provides that no marriage claimed to have been contracted on or after January 1, 1902, otherwise than as provided in the article, shall be valid, provided that no such marriage shall be invalid for want of authority in the person solemnizing it, if consummated with a full belief by the married persons or either of them, that they were lawfully married, or for any mistake in the date or place of marriage. *Held*, that the section did not destroy the ordinary presumption in favor of marriage, when the facts raise such presumption, though a marriage pursuant to the statute was not shown.
    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 58; Dec. Dig. § 40.*]

4. MARRIAGE (§ 40*)—PRESUMPTIONS—STATUTES—LIMITATIONS ON NATURAL RIGHT.
    The statute is a restraint upon the common-law right to make a contract of marriage, and should not be extended beyond its fair terms, but should be given a reasonable construction.
    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 58; Dec. Dig. § 40.*]

5. EVIDENCE (§ 80*)—PRESUMPTIONS—LAW OF OTHER STATE—STATUTE.
    It cannot be assumed that the statutes of other states on a given subject are the same as those of New York.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. § 80.*]

6. MARRIAGE (§ 40*)—PRESUMPTIONS.
    Domestic Relations Law (Laws 1896, c. 272) § 19, as added by Laws 1901, c. 339, § 6, provides that no marriage claimed to have been contracted on or after January 1, 1902, otherwise than as provided in the article, shall be valid.   Laws 1907, c. 742, amending the domestic relations law, provides that the chapter shall not affect marriages among Friends or Quakers, nor among people of any other denomination having a particular form of marriage, and that marriages so solemnized shall be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

valid. *Held* that, in the absence of a contrary showing, it cannot be presumed that a marriage taking place after January 1, 1902, was not solemnized in the manner provided by section 5.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 58; Dec. Dig. § 40.*]

7. MARRIAGE (§ 50*)—SUFFICIENCY OF EVIDENCE.

Evidence *held* not to sustain a finding that a valid marriage did not exist.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 79; Dec. Dig. § 50.*]

8. MARRIAGE (§ 14*)—COMMON-LAW MARRIAGE—CONSTRUCTION OF STATUTES.

Domestic Relations Law (Laws 1896, c. 272) art. 2, §§ 10–18, recognizes marriage as a civil contract, depending upon the consent of the parties, which it permitted to be shown by common-law evidence, but also provided a manner of solemnizing marriages "for the purpose of being registered and authenticated" pursuant thereto. Laws 1901, c. 339, amended article 2, by omitting from section 10 the quoted clause, leaving the section to provide that a marriage must be solemnized in one of the ways provided therein, and added a provision permitting a lawful marriage to be contracted pursuant to the regulations of a religious society, and added section 19, providing that no marriage claimed to have been contracted on or after January 1, 1902, otherwise than as provided in the article, should be valid, providing that no such marriage should be invalid by want of authority in the person solemnizing it, if consummated with full belief in its validity, or on account of mistake in the date, place of marriage, etc. The domestic relations law was again amended by Laws 1907, c. 742, by omitting from section 10 the provision excepting marriages according to the regulations of a religious society, and incorporating into section 7 a similar exception, and expressly repealed section 19, added by the Laws of 1901, and also renumbered, as section 6, section 11, subd. 4, of those Laws, relating to a written contract of marriage, and requiring it to be acknowledged as a conveyance, and amended said subdivision by requiring the acknowledgment to be before a judge and the contract to be recorded within six months with the county clerk. *Held*, that a common-law marriage is valid since the enactment of Laws 1907, c. 742.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 5; Dec. Dig. § 14.*]

Smith, P. J., dissenting.

Appeal from Surrogate's Court, Broome County.

In the matter of the application of Henry A. Hinman for the removal of Vena M. Hinman from office as administratrix of the estate of Charles N. Hinman, deceased. From a decree vacating the order appointing her administratrix, Vena M. Hinman appeals. Reversed, and motion to remove administratrix denied.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

Hinman, Howard & Kattell (Harvey D. Hinman, of counsel), for appellant.

Wilber & Yetter (Harry A. Yetter, of counsel), for respondent.

JOHN M. KELLOGG, J. [1] "The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. * * * The presumption of law is not lightly to be repelled. It is not to be broken in upon or shaken

by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory, and conclusive, * * * by disproving every reasonable possibility." Hynes v. McDermott, 91 N. Y. 451, 459 (43 Am. Rep. 677). The evidence shows conclusively that the parties lived together as husband and wife for many years, in the actual belief that they were married, and were so recognized by their friends and neighbors. It is practically conceded that a marriage at common law is shown; but we are asked to find that it took place between January 1, 1902, and January 1, 1908, when it is claimed that a common-law marriage in this state was not permissible. It is sought to reverse the presumption, and to assume that the marriage took place at a time, place, and manner which makes it illegal.

[2] The presumption of marriage does not assume that it took place at any particular place, manner, or time. It means that a legal marriage existed. The husband is dead. The wife is an incompetent witness to prove the time, place, or manner of marriage. If he were living, and she were a competent witness, they might be able to prove that the marriage took place in all respects according to the laws of this state; but they are necessarily silent. The marriage does not fail for that reason.

[3] The provisions of the domestic relations law relating to marriage are not a rule of evidence, and do not annul the ordinary presumption of law applicable thereto. Section 19 of that law did not attempt to visit the ban of invalidity on any contract of marriage, except upon one claimed to have been contracted otherwise than as mentioned in the statute.

[4] That statute is a restraint upon the natural common-law right of parties to make a contract of marriage, and must have a reasonable construction, but is not to be extended beyond its fair terms. It has no reference to and does not destroy the ordinary presumption of marriage. While that law was in force in all its terms, it was still permissible, when the facts required, to presume a legal marriage, although none was actually proved, which conformed to the statutory requirements. Several considerations invite the application of the presumption to this case.

It is uncontradicted that in the fall of 1901 the parties visited the appellant's mother, father, and sister at Equinunk, Pa. He was introduced as her husband, and occupied a room with her. Other evidence shows their acts and their claim to be married prior to January, 1902. They were in fact living in the house with his mother. The introduction of evidence tending to throw a doubt on their relations at that time does not meet the case, in view of their lives and conduct and the practical concession that a common-law marriage took place at some time. The relation of the parties from that time down to the death of the husband, aided by the presumption, is alone sufficient to determine this case in her favor. There are other facts upon which the presumption comfortably rests and which assure her position.

[5] They were out of the state at different times in Pennsylvania

and New Jersey, and we cannot assume that the statutory law of those states is the same as for a time existed in this state.

[6] It is provided by section 5 of chapter 742 of the Laws of 1907, which chapter is alleged to make common-law marriages invalid, that that chapter shall not affect marriages among the people called Friends or Quakers, nor marriages among people of any other denomination having as such any particular way of solemnizing marriages; but such marriages must be solemnized in the manner theretofore practiced in their respective societies or denominations, and that marriages so solemnized shall be as valid as if this article had not been passed. If the marriage took place in this state after January 1, 1902, we cannot assume that it did not take place in the manner provided for in this section.

[7] Irrespective of the question whether from January 1, 1902, to the death of the husband on September 17, 1908, common-law marriage might take place in this state, the evidence shows that the parties were right in believing that they were married, and the finding that there was no marriage is in conflict with the law and the evidence in the case.

[8] Counsel have ably argued the question whether a common-law marriage since the statute of 1907 is permissible in this state. The surrogate evidently believed it was not. The matter is of public interest, and, although not necessary to a decision of the case, it may not be unwise to give it consideration. Sections 10 to 18 of article 2 of the former domestic relations law (chapter 272, Laws of 1896), recognized marriage as a civil contract depending for its validity upon the consent of parties capable in law of making it, and permitted such consent to be shown by common-law evidence. It did, however, provide for a manner of solemnizing marriages in order to have them authenticated and recorded pursuant to that statute. Chapter 339 of the Laws of 1901 amended that article. From section 10 of the former law it omitted the words "for the purpose of being registered and authenticated as prescribed in this article," leaving that section to read that a marriage must be solemnized in one of the ways stated in its four subdivisions, and incorporated into section 10 of the law a provision that a lawful marriage, contracted in the manner and pursuant to the regulations of a religious society to which either party belongs, is as valid as if the article had not been amended; and it added to the law section 19, which declared that no marriage claimed to have been contracted after January 1, 1902, within this state, otherwise than as in that article provided, should be valid for any purpose whatever provided that no such marriage shall be deemed invalid by want of authority of the person solemnizing the same under section 11, if consummated with the full belief on the part of either of the contracting parties that they were lawfully joined in marriage, or on account of any mistake in the date, place of marriage, or residence of either of the contracting parties. It must be conceded that during the lifetime of section 19 a marriage claimed to have been solemnized in the state in other than the statutory mode and not pursuant to the regulations of a religious society to which the parties belonged was invalid. The

necessity of section 19 to require ceremonial marriages is apparent from the general rule that a statutory provision directing how marriages shall be performed is construed by the courts as merely directory, and does not affect the validity of a marriage otherwise contracted, unless there is a provision of the law asserting such invalidity. Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826.

Chapter 742 of the Laws of 1907 again amended the domestic relations law by striking from section 10 the provision excepting from the provisions of the article marriages according to the regulations of a religious society to which the parties belong, and incorporated into section 7 a similar and broader exception, and expressly repealed section 19, added by the Laws of 1901. Having thus stricken from the law every provision which declared other marriages invalid, the intention evidently was to recognize the validity of other marriages according to the well-known rule mentioned in Meister v. Moore, supra. Aside from that rule, the legislative intention is clear from the act itself. Section 19 had a saving clause, by which a marriage was recognized as legal if the parties were mistaken about the official character of the person solemnizing it, ignoring mistakes in names, dates, and places in the record. It cannot be that the Legislature meant to repeal this saving clause and make such excepted cases illegal. I think the repeal shows the changed public policy of the state, and that the Legislature became satisfied that the provision making marriages void unless performed in a particular manner was against the public good and public morals, and that the repeal was intended to and did make common-law marriages valid in this state.

We have not overlooked the fact that subdivision 4 of section 11 of the Laws of 1901, which related to a written contract of marriage and required it to be acknowledged in the same manner as is required of a conveyance of real estate to be recorded, was by the act of 1907 renumbered as section 6 and amended. The amendment added a proviso that the acknowledgment "must, in order to be valid," be before a judge. It also required that the contract be recorded within six months with the county clerk, instead of being filed with the town or city clerk. If the Legislature intended by the general clause of section 11, as is claimed, to make all marriages void which were not solemnized in the manner mentioned in one of its four subdivisions, then it was clearly unnecessary to insert the words quoted in subdivision 4, which provision in that subdivision can have no effect upon the other subdivisions. If the amendment of subdivision 4 was deemed necessary in order to make a written contract not according to its terms void, then it clearly was the legislative understanding that the other subdivisions of the section did not carry invalidity with them. The words quoted only relate to the acknowledgment of the paper, and do not relate to a failure to have it recorded as required by the next sentence of the amendment. The section, as amended, until we get to the proviso, permits the acknowledgment to be taken before any officer qualified to take an acknowledgment of conveyances for record. Instead of rewriting that sentence, the Legislature added the proviso, which was undoubtedly intended to mean that, notwith-

131 N.Y.S.—55

standing the general language immediately preceding, the contract was not in compliance with the statute unless acknowledged before a judge.

The order should be reversed upon the law and the facts, with costs, and the motion to remove the appellant as administratrix denied, with costs.

SEWELL and BETTS, JJ., concur. HOUGHTON, J., concurs in result. SMITH, P. J., dissents.