(95 Misc. Rep. 413)

## In re REINHARDT'S ESTATE.

(Surrogate's Court, Bronx County. December, 1915.)

1. MARRIAGE ⚫══47—DECLARATIONS—PERSONS SINCE DECEASED.

In a proceeding to revoke letters testamentary, on the theory that deceased was the husband of applicant, evidence of declarations by deceased that he was not married, relating as they did to pedigree, are competent.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 75; Dec. Dig. ⚫══47.]

2. MARRIAGE ⚫══42—EVIDENCE.

In such case, statements by applicant showing that she was intending to have a ceremonial marriage performed, while not necessarily inconsistent with the theory of a contractual marriage, should be considered in connection with her claim for reimbursement from the estate of deceased for services rendered before his death; such claim being absolutely inconsistent with the theory of her marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 70, 78; Dec. Dig. ⚫══42; Evidence, Cent. Dig. § 505.]

3. WITNESSES ⚫══219(3)—COMPETENCY—ATTORNEYS.

Despite Code Civ. Proc. § 835, making privileged communications by a client to his attorney, an attorney at law may testify to such communications, when acquiesced in or consented to by the client.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 781; Dec. Dig. ⚫══219(3).]

4. EVIDENCE ⚫══246—ADMISSIONS—ADMISSION BY ATTORNEY.

Admissions in letters written by an attorney for his client are binding on the client; the attorney being her agent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 945–949; Dec. Dig. ⚫══246.]

5. MARRIAGE ⚫══40(10)—PRESUMPTION.

The presumption of marriage, when it once arises, while strong, is rebuttable.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 79; Dec. Dig. ⚫══40(10).]

6. MARRIAGE ⚫══40(11)—BURDEN OF ESTABLISHING.

A woman, seeking the revocation of letters testamentary on the theory that deceased was married to her, has the burden of establishing the marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 68; Dec. Dig. ⚫══40(11).]

7. MARRIAGE ⚫══50(1)—BURDEN OF ESTABLISHING.

In a proceeding by a woman to revoke letters testamentary, on the theory that deceased was her husband, evidence *held* insufficient to establish that fact.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 79, 83, 88, 89; Dec. Dig. ⚫══50(1).]

In the matter of the application of Mrs. Anna Klumpf for revocation of letters testamentary issued upon the estate of Henry Reinhardt, deceased. Application denied.

Bernard J. Tinney, of New York City, for petitioner.

Edward J. Martin, of New York City, for respondent.

⚫══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SCHULZ, S.   The nature of this proceeding is set forth in the opinion in Matter of Reinhardt, 92 Misc. Rep. 96, 156 N. Y. Supp. 171, and a repetition thereof is therefore unnecessary.  Since that decision, a hearing has been had by me, and upon the record and evidence produced it becomes necessary to determine whether the petitioner is entitled to the relief which she asks, and this involves the question whether she was the wife and is the widow of the decedent.

The petitioner claims that she became the wife of the decedent by an agreement between them made on or about the 9th day of July, 1914, and thereafter, and until the death of the decedent, remained his lawful wife.  No evidence of a ceremonial marriage or a compliance with chapter 339 of the Laws of 1901 has been produced.

Two propositions are urged by the respondent: First, that, since the passage of the act above referred to, so-called common-law marriages no longer exist in this state; and, second, that, if they do exist, the evidence fails to warrant a finding that the petitioner was the wife of the decedent.

That such a marriage was not recognized between January 1, 1902, when chapter 339 of the Laws of 1901 took effect, and the date when chapter 742 of the Laws of 1907 became effective, is not questioned, but by the passage of the latter act some doubt has arisen as to whether this is still the case.

In Matter of Hinman, 147 App. Div. 452, 131 N. Y. Supp. 861, the court held that under the evidence produced it was satisfied that the relationship of marriage existed between the parties and had been consummated prior to the 1st of January, 1902, and then states that, although it is not necessary to a decision of the case, the court is of the opinion that the repeal of section 19 of the Domestic Relations Law (Consol. Laws, c. 14) by chapter 742 of the Laws of 1907 was intended to and did make common-law marriages valid in this state, citing Meister v. Moore, 96 U. S. 76, 24 L. Ed. 826.   When the case came before the Court of Appeals (Matter of Hinman, 206 N. Y. 653, 99 N. E. 1108), the latter, in affirming the order of the Appellate Division, said:

"The conclusion of the Appellate Division that chapter 742 of the Laws of 1907 has now made common-law marriages valid in this state has not been considered or determined by us."

In Matter of Smith, 74 Misc. Rep. 11, 133 N. Y. Supp. 730, the surrogate held that the passage of chapter 742 of the Laws of 1907 showed that the Legislature intended to remove the absolute inhibition of such marriages.   In that case, however, the facts themselves convinced the surrogate that no such marriage existed.   See, also, Kahn v. Kahn, 60 Misc. Rep. 334, 113 N. Y. Supp. 256.

So far, then, as we have any expression of an appellate or other court on the subject, the cases favor the contention of the petitioner, although the statement in Matter of Hinman, 147 App. Div. 452, 131 N. Y. Supp. 861, appears to be obiter dictum only.   In view of the conclusion which I reach upon the facts, however, it becomes unnecessary for me to determine this question in the matter before me; hence

I make no determination with regard to it. I assume, without deciding, that the petitioner may establish the relationship of marriage with the decedent at common law, and proceed to a consideration of the facts.

[1] The decedent was in the habit of spending his summers at a seaside resort near the city of New York. He had been there in the summer of 1913, and at that time the petitioner, under her former name, "Anna Klumpf," accompanied him in the capacity of an attendant or nurse. She occupied a room separate from that occupied by him and was known as "Mrs. Klumpf." The decedent was an aged man, in very poor health, suffering from cancer, and the petitioner was his housekeeper when he lived in the city of New York, and thus accompanied him as stated when he left for his sojourn at the seashore. In the summer of 1913 she became acquainted with a number of people who were also guests at the same hotel. The following year the decedent and the petitioner again went there. His condition at that time was very much worse than it had been the year previous. The testimony of people who lived at the same hotel is that in the year 1914 he introduced the petitioner as his wife; that she then occupied the same room with him, in which there were two beds; and that he told some of the guests that he had married her since the year before, and others that he had married her in February, 1914. I am satisfied that the witnesses who thus testified spoke the truth, and the facts thus narrated raise a presumption that the petitioner and the decedent had entered into a marriage contract, but fixed no definite date. Clayton v. Wardell, 4 N. Y. 230; Gall v. Gall, 114 N. Y. 109, 21 N. E. 106; Matter of Hamilton, 76 Hun, 200, 27 N. Y. Supp. 813.

A neighbor, however, testifies that she called at the apartment of the decedent, the day after the latter and the petitioner came back from the country, and that she then asked the petitioner if she was married to the decedent, and the former said no, but that she had called herself Mrs. Reinhardt in the country to save her good name. The same witness says that the day before the death of the decedent the petitioner again told her that she was not married to the decedent, and asked her to go to a clergyman and make arrangements so that she could get married to the decedent before he died. Witness states that she called upon the clergyman, but was told that the parties would have to procure a license. The wife of the clergyman in question testified that the petitioner called at the parsonage and said that the reason she had not come as per the arrangement made by the woman she had sent was that the man died the day after the woman called. The clergyman himself testified that the petitioner asked him if he remembered the lady who called to make arrangements for petitioner's marriage to Mr. Reinhardt.

An attorney at law was called. There was no claim that he was not the attorney for the petitioner. The objection made to his testimony, upon the ground that it was barred by section 835 of the Code of Civil Procedure, in effect conceded that the witness was the petitioner's attorney. He identified two letters he had written, one bearing

date October 5, 1914, and addressed to a nephew of the decedent, who is named as executor in the instrument which has been propounded as the latter's last will and testament.   In this letter, he calls the attention of the nephew to the fact that "Mrs. Anna Klumpf" has called upon him concerning her claim against the estate of his uncle, and suggesting a conference to see if the claim cannot be mutually adjusted without the necessity of bringing an action against the estate to enforce it.   The other letter, bearing date April 14, 1915, is directed to the attorney for the executor.   In this letter the writer states:

"The claim in behalf of Mrs. Anna Klumpf against the estate consists of a verbal agreement made between the claimant and the decedent, * * * wherein the decedent promised and agreed that, if the claimant would take care of and attend to the decedent during his life, he would provide for her financially so that she would have sufficient to live upon for the rest of her life,"

And further:

"The decedent also promised that he would marry the claimant as soon as he would recover from his illness"

—and suggesting that the attorney take the matter up with the executor with a view to an amicable adjustment.

The petitioner was in court when the witnesses above referred to testified.   She was called as a witness after their testimony had been given and the evidence and the letters introduced, but she neither contradicted nor explained the same in any way.

The physician who attended the decedent during his last illness testified that two days before the latter's death he told him that he was not married.   Another witness says that she saw him in June, 1914, and he then said he would keep his word to his wife, who had died, and never would get married again.   This testimony was admitted over objection, and, while I believe the other evidence submitted is sufficient to warrant the conclusion which I arrive at, I think this testimony, relating as it did to pedigree, was proper.   Washington v. Bank for Savings, 171 N. Y. 166, 175, 63 N. E. 831, 89 Am. St. Rep. 800.

Another witness testified that after her return from the country petitioner said that the decedent wanted her to marry him, and that it was a shame that she had been imported from Germany just to save money for the Reinhardt family.   Testimony was also introduced to the effect that after the return of the decedent and the petitioner to the city in 1914, she was addressed by the name "Mrs. Klumpf," in the presence and hearing both of the petitioner and the decedent, without objection from either.

[2] While the fact that the petitioner was making arrangements to have a religious marriage ceremony performed, and even her statements and those of the decedent to the effect that they were not married, might, if standing alone, be consistent with the existence of a marriage contract (Renholm v. Public Adm'r, 2 Redf. Sur. 456), on the theory that the statements referred to a ceremonial marriage, I think they should not be so construed in the light of the claim made by the petitioner through her attorney after the death of the decedent.

The latter is entirely antagonistic to and irreconcilable with the alleged relationship which she now claims existed between her and the decedent at that time.

[3] The letters to which I have referred above were not objected to on any ground other than that under section 835 of the Code of Civil Procedure the witness was not permitted to disclose any communication made to him in his professional capacity. The introduction of the letters in question did not, in my opinion, violate the prohibition contained in section 835 of the Code. This section does not prohibit an attorney at law from testifying as to a communication made by his client to him, or his advice given thereon, in the course of his professional employment, but provides only that he shall not be permitted to *disclose* such a communication. When the same has already been disclosed with the acquiescence or consent of the client, or at the latter's direction, the testimony is competent, and is not prohibited by the section in question. Baumann v. Steingester, 213 N. Y. 328, 107 N. E. 578; People v. Roach, 215 N. Y. 592, 109 N. E. 618.

[4] It is undisputed that the writer of the letters was the attorney for the respondent. Hence, in my opinion, the attorney being at least her agent, she is chargeable with admissions contained in the letters. Wigm. Ev. § 1069; Mechem, Agency, §§ 1782, 2179; 16 Cyc. 1003; Anderson v. Rome, W. & O. R. R. Co., 54 N. Y. 334, 340.

[5] That the presumption of marriage, when it once arises, is a strong one, there can be no doubt; but it is certainly rebuttable (Clayton v. Wardell, supra; Hynes v. McDermott, 91 N. Y. 451, 43 Am. Rep. 677), and when the uncontradicted testimony of unimpeached witnesses and the subsequent acts of the alleged widow are such as to convince the court that no contract of marriage was made between the parties, the presumption is overcome.

[6, 7] The petitioner was required to establish her status in this court. Matter of Hamilton, 76 Hun, 200, 27 N. Y. Supp. 813. Without further discussing the voluminous testimony that has been introduced, the petitioner in my opinion has failed to establish her status as the widow of decedent. On the contrary, I believe a fair preponderance of the evidence is against her contention. It follows that the application must be denied.

Application denied.