The application is therefore denied.

Application denied.

---

Matter of the Application for the Appointment of a Guardian of JOHN MANCINI, an Infant, under Fourteen Years.

(Surrogate's Court, Montgomery County, July, 1919.)

Surrogates' Courts — jurisdiction of — presumption of legitimacy — guardianship — infants — Code Civ. Pro. §§ 2510, 2643, 2649.

> Where the parents of a boy six years of age in May, 1919, three months before his birth agreed to get married and the mother knew the father was furnishing a house so that they might live there as husband and wife, the presumption is that the child, who now is and has been for some time living with his maternal grandparents in the same city as his father, is legitimate, and the petition of the father to be appointed guardian of his child may be granted by the Surrogate's Court under sections 2510, 2643 and 2649 of the Code of Civil Procedure, though the mother, who was married to another in 1915, opposes the application.

> The order appointing the father as guardian may provide that the mother should have access to her son at such times and in such manner as may be proper for his best interests.

APPLICATION for the appointment of a guardian of the person of John Mancini, an infant, under the age of fourteen years.

Christopher J. Heffernan, for petitioner, father, Jerry Mancini.

W. Arthur Kline, for respondent, mother, Mary Delos Denton.

SPONABLE, S.   This matter comes before the surrogate on the petition of the father, Jerry Mancini, to be appointed the guardian of the person of John Mancini, an infant, aged six years in May, 1919.   The application is opposed by the mother of the infant, Mary Delos Denton, now the wife of Ernest Denton, to whom she was married on November 29, 1915, and with whom she resides at 158 Forbes street, Amsterdam, N. Y.   The petitioner, the father of the infant, also resides in the city of Amsterdam, N. Y.   The infant is now and has been for some time past living with its grandfather and grandmother, Peter Delos and Louisa Delos, the father and mother of the mother of said infant, on Forbes street in the city of Amsterdam, N. Y.

The Surrogate's Court has power to appoint a guardian for this infant upon such an application as has been made in this proceeding.   Code Civ. Pro. §§ 2510, 2643, 2649.

" The surrogate's court has the like power and authority to appoint a general guardian of the person or of the property, or both, of an infant, which the chancellor had, on the thirty-first day of December, eighteen hundred and forty-six. It has also power and authority to appoint a general guardian, of the person or of the property, or both, of an infant whose father or mother is living, and to appoint a general guardian of the property only, of an infant married woman. Such power and authority must be exercised in like manner as they were exercised by the

court of chancery, subject to the provisions of this act." Code Civ. Pro. § 2643.

It seems that chapter 742 of the Laws of 1907 amending the Domestic Relations Law again made common-law marriages in this state valid. *Matter of Hinman,* 147 App. Div. 452; affd., 206 N. Y. 653; *Meister* v. *Moore,* 96 U. S. 76; *Matter of Smith,* 74 Misc. Rep. 11; *Matter of Reinhardt,* 95 id. 413; *Matter of Ziegler* v. *Cassidy's Sons,* 220 N. Y. 98–111.

Keeping in mind the fact that the question in this case should be determined so as to promote the interests and for the welfare of the infant, it might be well before discussing the facts to briefly consider the rules of law heretofore applied in disposing of similar questions.

In *Tracy* v. *Frey,* 95 App. Div. 579, in which the leading cases upon marriage and legitimacy of children are cited and discussed, the court says: "In the absence of proof, the presumption is of marriage arising out of cohabitation in the apparent relation of husband and wife, of the innocent and lawful character of such relationship and of the legitimacy of children which are the fruit of such a union. In no branch of the law is the presumptive rule more rigidly enforced, * * * the relation in its inception was meretricious, and although there was no proof of any ceremonial marriage or other contract of marriage thereafter, yet, as the parties continued to cohabit together, and declarations were made * * * it was held that a marriage subsequent to the commencement of the illicit relation would be presumed, and that a finding of a subsequent contract of marriage between the parties. would be upheld, although there was no direct proof establishing the same."

"Also, where it is admitted that the cohabitation of

the parties is illicit in its origin, the presumption is that it so continues and before it can be characterized as a lawful relation proof is required of such acts and circumstances as indicate that the relation has ceased to be illicit and become matrimonial.''

The case above cited quotes Judge Vann, in *Gall* v. *Gall*, 114 N. Y. .109, in speaking upon this subject: '' It is sufficient if the acts and declarations of the parties, their reputation as married people and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife.''

'' The presumption of marriage, from a cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law. This is especially true in a case involving legitimacy. The law presumes morality, and not immorality; marriage and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence.'' *Matter of Hynes* v. *McDermott*, 91 N. Y. 451–459.

The presumption is that John Mancini is a legitimate child. *Matter of Biersack*, 96 Misc. Rep. 163.

In making the application of rules of law above cited, unless it has been shown by the facts in the case before me that Jerry Mancini, the father, is incompetent to act as guardian, what must be the logical conclusion? Would this court be promoting the interests of and be looking after the welfare of the infant by a decision inferring that he is the illegitimate child and if not directly, indirectly causing him and his name to bear such a stain throughout the remainder of his years? I think not. Had Jerry Mancini, the father, and Mary Delos, the mother, agreed

Surrogate's Court, Montgomery County, July, 1919. [Vol. 108.

to get married? Had they agreed to live together as man and wife? Did they live as man and wife? The mother says that she went to Schenectady to get married. If we take this as true there can be no other inference but that there had been an agreement to get married. He had furnished a home on Center street in Amsterdam which the mother knew of and knew that it was being so furnished so that she and Jerry might live there as man and wife and the mother says that they had agreed to be married. This all happened three months before this infant, John Mancini, was born. They went to live at the house which Jerry Mancini, the father, had furnished and they lived there together in such manner as any man and wife would live. The neighbors called her " Mrs. Mancini," she was known as " Mrs. Mancini," and it was generally understood that they were husband and wife and even her father and mother, Peter Delos and Louisa Delos, thought they were man and wife. Their relations were such that another child was born.

I cannot help but conclude from these facts and many others that might be cited that John Mancini is the legitimate child of Jerry Mancini. It has not been shown that Jerry Mancini is incompetent to act as the guardian of his son and, therefore, upon the facts in the case, not forgetting that the mother has in her custody and under her control the younger child and inasmuch as she consented in writing that the father have the custody and control of this infant, I will grant the application of the petitioner.

I should like, however, to have such appointment conditioned with the provision that the mother should have access to her son at such times and in such manner as might be proper and conducive to the best interests of the infant, and the order appointing the father

the guardian may provide for some access to the infant on the part of the mother.

The order may be settled by the attorneys for the respective parties appearing before me at a designated term, by agreement or upon notice, and the amount of the security then fixed, when I will also hear arguments as to the terms and conditions of the mother's access to her child.

Decreed accordingly.