In the Matter of the Estate of CHARLES E. MURTHA, JR., Deceased.

Surrogate's Court, New York County, January 16, 1930.

*George Thoms*, for the petitioner.

*Wilson, Wager & Cornell*, for Charles E. Murtha.

*Weschler & Kohn*, for Graham Murtha.

O'BRIEN, S. This is an application of Kathryn Lynch Murtha to revoke letters of administration issued to Graham Murtha, a brother of the deceased, on the ground that the petitioner is the widow of the intestate, and, therefore, has a prior right to such letters. An answer was filed denying that the petitioner is the widow of the intestate and the issue raised by these pleadings was duly tried.

The petitioner bases her claim of widowhood upon an alleged common-law marriage. At the trial considerable testimony was taken. Twelve witnesses, most of whom were neighbors of decedent and petitioner and the rest of whom were friends, were called to establish the mode of living and the relationships between decedent and petitioner. *Decedent died May 20, 1928.* Most of the testimony presented was centered in the residence of decedent and petitioner at 551 West One Hundred and Seventieth street where, according to the proofs, they lived from 1909 to 1923, when their residence was changed to 26 West Forty-seventh street. Later, and in the same year, they took up a residence at 334 West Seventy-second street, and subsequently in No. 239 West Seventy-second street, from which place in his last illness decedent was taken to the hospital, where he died. They lived together as man and

wife, recognizing each other as such, referring to each other as " wife " and " husband " respectively; that they held themselves out as husband and wife in the sphere in which they lived, and that the above described marriage relationships were continuous and constant from 1909 down to the time of his death in 1928. These facts were clearly and convincingly proven by the witnesses called on behalf of petitioner. These witnesses were: Edward Brown, the elevator man in the premises 551 West One Hundred and Seventieth street from 1912 to 1917, who described in detail his various meetings with decedent and petitioner and his calls at their apartment; Julia Alexander, a neighbor from about 1911 or 1912 to 1923; Gertrude Vail, who lived in an adjoining apartment for more than sixteen years; Edith Hepner, and her daughter, Belle Hepner, other neighbors, who lived in the same house with decedent from 1908 to 1918; Mrs. John A. Mason, a neighbor in the same house from 1909 to 1914, and her daughter, Edna C. Mason, who lived there for the same period; Jennie Brown, a neighbor from 1914 to 1923. The relationships, mutual attitude and bearing toward each other, their representations as to marital status for the period from 1923 down to decedent's death in 1928, were described in the testimony of Percy S. Clark and Marie Clark, his wife, Rene Lulejian and Arsen Kallashian.

After hearing and considering the testimony of all the witnesses heard at the trial there is no escape from the conviction that decedent and petitioner were to all intents and purposes husband and wife and that they held themselves out to all the people in the circle in which they lived as husband and wife. It was disclosed in the testimony of most of the witnesses that the decedent and the petitioner were known as " Mr. and Mrs. Lynch." The identification of the decedent moreover as " Mr. Lynch " was definitely and indubitably established by the proofs presented. I am of the opinion that the assumption by the decedent of petitioner's surname " Lynch " and the fact that in the circle in which he moved he was known always as " Mr. Lynch " are no barrier to the claim of petitioner to a common-law wife relationship.

Practically the only testimony in opposition to petitioner's claim was that offered by a sister and a brother of decedent. The former testified as follows: (Direct examination by Mr. Wechsler:) " Q. Where do you live? A. 225 West 86th Street. Q. You are a sister of the decedent, Charles E. Murtha, Jr.? A. Yes. Q. How long have you resided in 86th Street?. A. Six years. Q. Before that time where did you live? A. 157 South Ninth Street, Brooklyn. Q. And your brother Charles lived there with you? A. He did. Q. Until you removed to New York six years ago? A. Yes,

sir. Q. You saw him there regularly? A. Yes. Q. Slept there? A. Yes, sir.".

Decedent's brother testified to the effect that for all of the period prior to 1918 when he, the witness, was married and left the family home, decedent lived in said home, No. 157 South Ninth street, Brooklyn, and that he slept there three or four nights a week. While the sister's testimony is contradictory of the testimony of petitioner's witnesses as to the period prior to 1922, and while the brother's testimony, as far as it goes, is contradictory of the testimony of petitioner's witnesses as to the period prior to 1918, it is conceded by both that for six years prior to decedent's death he did not live with the family. Furthermore, neither of these two witnesses went very much into detail in their testimony. Even as to the period prior to 1918, when said brother was living in the family home in Brooklyn, he states that decedent slept at home three or four nights a week. Likewise decedent's sister testified only that he " slept there."

I hold that petitioner has established a common-law marriage relationship. (*Gall* v. *Gall*, 114 N. Y. 109; *Hynes* v. *McDermott*, 91 id. 451; *Matter of Hinman*, 147 App. Div. 452; affd., 206 N. Y. 653.)

Application to revoke letters of administration is granted. Submit decree.