## MEISTER v. MOORE.

1. A marriage valid at common law is valid, notwithstanding the statutes of the State where it is contracted prescribe directions respecting its formation and solemnization, unless they contain express words of nullity.

2. This court adopts, as an authoritative declaration of the law of Michigan, the ruling of the Supreme Court of that State in *Hutchins* v. *Kimmell*, 31 Mich. 126, that, notwithstanding the statutory regulations have not been complied with, a marriage contracted there *per verba de præsenti* is valid.

ERROR to the Circuit Court of the United States for the Western District of Pennsylvania.

This was ejectment, brought Oct. 9, 1873, by Bernard L. Meister, for the possession of certain lots of ground in Pittsburg, Pa.

Both parties claimed under William Mowry, the plaintiff, as the alienee of the alleged wife and daughter of said William, and the defendants, as the vendees of his mother, in whom the title of the property vested, if he died unmarried and without issue.

The plaintiff, to maintain the issue on his part, introduced evidence tending to prove that, some time in the year 1844 or 1845, said William went from Pittsburg to the Saginaw Valley, in the State of Michigan, and there became acquainted with Mary, the daughter of an Indian named Pero; that, in the latter part of the year 1845, Mowry and Mary were married, and thereafter lived and cohabited together as man and wife, and had one child born to them, named Elizabeth; that said Mowry died intestate, some time in 1852, at Pittsburg, leaving no issue living at his death save said Elizabeth, who afterwards married one Isaacs; and that they, Aug. 27, 1873, conveyed the demanded premises to the plaintiff.

The defence was —

1. That the plaintiff's evidence, even if true, did not, under the statute of Michigan, regulating the solemnization of marriage, establish a valid marriage between William Mowry and the Indian woman.

2. That that evidence utterly failed to establish a valid marriage at common law.

The Revised Statutes of Michigan upon the subject of the

solemnization of marriages, adopted in the year 1838, and in force at the time of the alleged marriage, enact as follows: —

"SECT. 6. Marriages may be solemnized by any justice of the peace in the county in which he is chosen; and they may be solemnized throughout the State by any minister of the gospel who has been ordained according to the usages of his denomination, and who resides within this State, and continues to preach the gospel."

"SECT. 8. In the solemnization of marriage no particular form shall be required, except that the parties shall solemnly declare, in the presence of the magistrate or minister and the attending witnesses, that they take each other as husband and wife. In every case there shall be at least two witnesses, besides the minister or magistrate, present at the ceremony."

"SECT. 14. No marriage solemnized before any person professing to be a justice of the peace or a minister of the gospel shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected on account of any want of jurisdiction or authority in such supposed justice or minister: *Provided*, that the marriage be consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage.

"SECT. 15. The preceding provisions, so far as they relate to the manner of solemnizing marriages, shall not affect marriages among the people called Friends, or Quakers, nor marriages among the people called Menonists; but such marriages may be solemnized in the manner heretofore used and practised in their respective societies." Rev. Stat. 1838, pp. 334, 335.

The court below charged the jury that the validity of the alleged marriage must be determined by the laws of Michigan; and that, if they found that neither a minister nor a magistrate was present thereat, — and such was the plaintiff's proof, — it was invalid under the statute of that State, and their verdict should be for the defendants.

There was a verdict for the defendants. Judgment was rendered accordingly, whereupon the plaintiff brought the case here.

*Mr. H. W. Weir* for the plaintiff in error.

A statute regulating the forms of marriage is merely directory, and, unless it contains an express clause of nullity, a marriage *per verba de præsenti* is valid. 1 Bishop, Mar. & Div., sects. 277 *a*, 279, 280, 283 *et seq.*; *The State* v. *Worthington*, Chi-

cago Legal News, June 16, 1877; *Commonwealth* v. *Jackson*, 11 Bush (Ky.), 679; 2 Greenl. Evid., sects. 461, 462. Such is the ruling of the Supreme Court of Michigan. *Hutchins* v. *Kimmell*, 31 Mich. 126; *Proctor* v. *Bigelow*, Jan. Term, 1878, not yet reported.

*Mr. M. W. Acheson, contra.*

The judgment below is not erroneous. *People* v. *Slack*, 15 Mich. 198; *Holmes* v. *Holmes*, 1 Abb. (U. S.) 525; *Milford* v. *Worcester*, 7 Mass. 48; *Ligonia* v. *Buxton*, 2 Me. 95; *Roche* v. *Washington*, 19 Ind. 53; *The State* v. *Samuel*, 2 Dev. & B. (N. C.) Eq. 177; *State* v. *Patterson*, 2 Ired. (N. C.) L. 346; *Bashaw* v. *State of Tennessee*, 1 Yerg. (Tenn.) 177; *Grisham* v. *State of Tennessee*, 2 id. 589; *Robertson* v. *The State*, 42 Ala. 509.

Affirmative statutes which introduce a new rule or prescribe a specific mode of doing a thing imply a negative of all that is not within their purview. *Slade* v. *Drake*, Hob. 298; *Stradling* v. *Morgan*, Plowd. 206.

A contract in contravention of statutory provisions which contain nothing from which its validity can be inferred, is void. *Mitchell* v. *Smith*, 1 Binn. (Pa.) 118; *Bank* v. *Haldeman*, 7 Watts & S. (Pa.) 233.

MR. JUSTICE STRONG delivered the opinion of the court.

The learned judge of the Circuit Court instructed the jury, that, if neither a minister nor a magistrate was present at the alleged marriage of William A. Mowry and the daughter of the Indian Pero, the marriage was invalid under the Michigan statute; and this instruction is now alleged to have been erroneous. It certainly withdrew from the consideration of the jury all evidence, if any there was, of informal marriage by contract *per verba de præsenti*. That such a contract constitutes a marriage at common law there can be no doubt, in view of the adjudications made in this country, from its earliest settlement to the present day. Marriage is everywhere regarded as a civil contract. Statutes in many of the States, it is true, regulate the mode of entering into the contract, but they do not confer the right. Hence they are not within the principle, that, where a statute creates a right and provides a remedy for

its enforcement, the remedy is exclusive. No doubt, a statute may take away a common-law right; but there is always a presumption that the legislature has no such intention, unless it be plainly expressed. A statute may declare that no marriages shall be valid unless they are solemnized in a prescribed manner; but such an enactment is a very different thing from a law requiring all marriages to be entered into in the presence of a magistrate or a clergyman, or that it be preceded by a license, or publication of banns, or be attested by witnesses. Such formal provisions may be construed as merely directory, instead of being treated as destructive of a common-law right to form the marriage relation by words of present assent. And such, we think, has been the rule generally adopted in construing statutes regulating marriage. Whatever directions they may give respecting its formation or solemnization, courts have usually held a marriage good at common law to be good notwithstanding the statutes, unless they contain express words of nullity. This is the conclusion reached by Mr. Bishop, after an examination of the authorities. Bishop, Mar. and Div., sect. 283 and notes. We do not propose to examine in detail the numerous decisions that have been made by the State courts. In many of the States, enactments exist very similar to the Michigan statute; but their object has manifestly been, not to declare what shall be requisite to the validity of a marriage, but to provide a legitimate mode of solemnizing it. They speak of the celebration of its rite rather than of its validity, and they address themselves principally to the functionaries they authorize to perform the ceremony. In most cases, the leading purpose is to secure a registration of marriages, and evidence by which marriages may be proved; for example, by certificate of a clergyman or magistrate, or by an exemplification of the registry. In a small number of the States, it must be admitted, such statutes have been construed as denying validity to marriages not formed according to the statutory directions. Notably has this been so in North Carolina and in Tennessee, where the statute of North Carolina was in force. But the statute contained a provision declaring null and void all marriages solemnized as directed, without a license first had. So, in Massachusetts, it was early decided that a

statute very like the Michigan statute rendered illegal a marriage which would have been good at common law, but which was not entered into in the manner directed by the written law. *Milford* v. *Worcester*, 7 Mass. 48. It may well be doubted, however, whether such is now the law in that State. In *Parton* v. *Henry* (1 Gray (Mass.), 119), where the question was, whether a marriage of a girl only thirteen years old, married without parental consent, was a valid marriage (the statute prohibiting clergymen and magistrates from solemnizing marriages of females under eighteen, without the consent of parents or guardians), the court held it good and binding, notwithstanding the statute. In speaking of the effect of statutes regulating marriage, including the Massachusetts statute (which, as we have said, contained all the provisions of the Michigan one), the court said: "The effect of these and similar statutes is not to render such marriages, when duly solemnized, void, although the statute provisions have not been complied with. They are intended as directory only upon ministers and magistrates, and to prevent as far as possible, by penalties on them, the solemnization of marriages when the prescribed conditions and formalities have not been fulfilled. But, in the absence of any provision declaring marriages not celebrated in a prescribed manner, or between parties of certain ages, absolutely void, it is held that all marriages regularly made according to the common law are valid and binding, though had in violation of the specific regulations imposed by statute." There are two or three other States in which decisions have been made like that in 7th Massachusetts.

We will not undertake to cite those which hold a different doctrine, one in accord with the opinion we have cited from 1 Gray. Reference is made to them in Bishop, Mar. and Div. sect. 283 *et seq.*; in Reeve's Domestic Relations, 199, 200; in 2 Kent, Com. 90, 91; and in 2 Greenleaf on Evidence. The rule deduced by all these writers from the decided cases is thus stated by Mr. Greenleaf: —

"Though in most, if not all, the United States there are statutes regulating the celebration of marriage rites, and inflicting penalties on all who disobey the regulations, yet it is generally considered, that, in the absence of any positive statute declaring that all mar-

riages not celebrated in the prescribed manner shall be void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage, regularly made according to the common law, without observing the statute regulations, would still be a valid marriage."

As before remarked, the statutes are held merely directory; because marriage is a thing of common right, because it is the policy of the State to encourage it, and because, as has sometimes been said, any other construction would compel holding illegitimate the offspring of many parents conscious of no violation of law.

The Michigan statute differs in no essential particular from those of other States which have generally been so construed. It does not declare marriages void which have not been entered into in the presence of a minister or a magistrate. It does not deny validity to marriages which are good at common law. The most that can be said of it is, that it contains implications of an intention that all marriages, except some particularly mentioned, should be celebrated in the manner prescribed. The sixth section declares how they may be solemnized. The seventh describes what shall be required of justices of the peace and ministers of the gospel before they solemnize any marriage. The eighth declares that in every case, that is, whenever any marriage shall be solemnized in the manner described in the act, there shall be at least two witnesses present beside the minister or magistrate. The ninth, tenth, eleventh, sixteenth, and seventeenth sections provide for certificates, registers, and exemplifications of records of marriages solemnized by magistrates and ministers. The twelfth and thirteenth impose penalties upon justices and ministers joining persons in marriage contrary to the provisions of the act, and upon persons joining others in marriage, knowing that they are not lawfully authorized so to do. The fourteenth and fifteenth sections are those upon which most reliance is placed in support of the charge of the Circuit Court. The former declares that no marriage solemnized before any person professing to be a justice of the peace or minister of the gospel shall be deemed or adjudged to be void on account of any want of jurisdiction or authority in such supposed minister or justice, provided the marriage be

consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage. This, it is argued, raises an implication that marriages not in the presence of a minister or justice, or one professing to be such, were intended to be declared void. But the implication is not necessarily so broad. It is satisfied if it reach not beyond marriages in the mode allowed by the act of the legislature.

The fifteenth section exempts people called Quakers, or Friends, from the operation of the act, as also Menonists. As to them the act gives no directions. From this, also, an inference is attempted to be drawn that lawful marriages of all other persons must be in the mode directed or allowed. We think the inference is not a necessary one. Both these sections, the fourteenth and the fifteenth, are to be found in the acts of other States, in which it has been decided that the statutes do not make invalid common-law marriages.

It is unnecessary, however, to pursue this line of thought. If there has been a construction given to the statute by the Supreme Court of Michigan, that construction must, in this case, be controlling with us. And we think the meaning and effect of the statute has been declared by that court in the case of *Hutchins* v. *Kimmell* (31 Mich. 126), a case decided on the 13th of January, 1875. There, it is true, the direct question was, whether a marriage had been effected in a foreign country. But, in considering it, the court found it necessary to declare what the law of the State was; and it was thus stated by Cooley, J.: "Had the supposed marriage taken place in this State, evidence that a ceremony was performed ostensibly in celebration of it, with the apparent consent and co-operation of the parties, would have been evidence of a marriage, even though it had fallen short of showing that the statutory regulations had been complied with, or had affirmatively shown that they were not. Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to

legal penalties for a disregard of its obligations. This has become the settled doctrine of the American courts; the few cases of dissent, or apparent dissent, being borne down by the great weight of authority in favor of the rule as we have stated it;" citing a large number of authorities, and concluding, " such being the law of this State." We cannot regard this as mere *obiter dicta.* It is rather an authoritative declaration of what is the law of the State, notwithstanding the statute regulating marriages. And if the law in 1875, it must have been the law in 1845, when, it is claimed, Mowry and the Indian girl were married; for it is not claimed that any change of the law was made between the time when the statute was enacted and 1875. The decision of the Michigan Supreme Court had not been made when this case was tried in the court below. Had it been, it would doubtless have been followed by the learned and careful circuit judge. But, accepting it as the law of Michigan, we are constrained to rule there was error in charging the jury, that, if they found neither a minister nor a magistrate was present at the alleged marriage, such marriage was invalid, and the verdict should be for the defendants.

It has been argued, however, that there was no evidence of any marriage good at common law, which could be submitted to the jury, and, therefore, that the error of the court could have done the plaintiff no harm. If all the evidence given or legally offered were before us, we might be of that opinion; but the record does not contain it all, and we are unable, therefore, to say the ruling of the court was immaterial. The case must, therefore, go back for a new trial. We do not consider the other questions presented. They may not arise on the second trial.

*Judgment reversed, and new trial ordered.*

NOTE. — In *Meister* v. *Bissell,* which embraced the same facts as did the preceding case, and which was argued at the same time and by the same counsel as was that case, MR. JUSTICE STRONG, in delivering the opinion of the court, remarked that the opinion given in that case controlled this.

*Judgment reversed, and new trial ordered.*