R. M. Waldrop v. The State.

No. 2091.    Decided October 25, 1899.

**1.    Bigamy—Proof of Former Marriage.**

Marriage is a civil contract, and our statutes with regard to the mode and manner of the celebration of marriage are merely directory and do not render null or prescribe penalties against marriages not entered into under the terms they prescribe.    Marriage, when proved by general reputation, cohabitation, and admissions and confessions of the parties, is valid.    And whenever such evidence establishes in the minds of the jury beyond a reasonable doubt, the existence of the fact of a valid first marriage it is sufficient in that regard to sustain a verdict and judgment of conviction for bigamy.

**2.    Same—Evidence—Declarations of Celebrant.**

On a trial for bigamy it is competent to prove by a witness who was present at the first marriage in Alabama, that the justice of the peace who performed the marriage ceremony stated in the presence of defendant that he did so by virtue of authority vested in him by a certain paper held in his hands, no objection having been made to the proof by the witness that the said party performing the ceremony was a justice of the peace.

**3.    Same—Proof of Children by Second Marriage.**

On a trial for bigamy it is competent to prove the number of children born to defendant and the wife of his second marriage.

Appeal from the District Court of Bell.    Tried below before Hon. John M. Furman.

Appeal from a conviction of bigamy; penalty, five years imprisonment in the penitentiary.

This indictment contained four counts in substance charging that appellant did on the 7th day of July, 1898, unlawfully marry and have for his wife one Ludie Glasson, he, the said R. M. Waldrop, then and there having a lawful former wife then living, to wit, one Laura Nabors Waldrop.

The State proved by A. M. Nabors that he was the father of Laura Nabors, and that on the 25th day of February, 1892, in Morgan County, Alabama, where witness then lived, defendant was married to his daughter, Laura Nabors.    That the ceremony was performed by one Ryan, a justice of the peace in said State and county at that time. That the said justice held a paper in his hand and stated that by

virtue of that instrument and the authority vested in him he would solemnize the rites of matrimony between defendant and the said Laura Nabors. That after the marriage the parties lived together as husband and wife three or four years, and there were two children the issue of said marriage, one of whom was still living. That defendant's wife, Laura Nabors, is still living, is now present in court, and there was never any divorce gotten by either party. Several other witnesses testified that they were present at defendant's marriage to Laura Nabors in Morgan County, Alabama.

Defendant's second marriage to Miss Ludie Glasson, in Bell County, Texas, on the 7th day of July, 1898, was proved by several witnesses who were present and witnessed the ceremony. It was proved that since defendant had been living with Ludie Glasson one child had been born to them.

*Pearce & Felts*, for appellant.—The trial court instructed the jury that "in prosecutions for bigamy under this statute, a valid marriage of the defendant, and subsequent marriage by him during the life of his lawful wife, must be proved." The jury could and might have construed the above instruction to require proof of a valid second marriage. The appellant requested the court to instruct the jury that "a valid marriage is one which has been solemnized according to the mode and manner, and in accordance with the prerequisites, which the law of the place where solemnized has required." Dumas v. State, 14 Texas Crim. App., 472.

If the jury construed the court's charge to mean that a valid first marriage must be proved, they could not intelligently make up their verdict without knowing what constitutes a valid marriage. It might be supposed that the first marriage was valid, but in criminal law we do not indulge in suppositions. Unless the first marriage was valid there could be no bigamy. The first marriage must be valid. Its validity can not be presumed but must be proved. Bish. on Stat. Crimes, sec. 609.

Appellant's bill of exceptions number 3 shows that the court permitted the State to prove declarations made by the justice of the peace while performing the alleged first marriage ceremony. The declarations were that he (the justice) performed the ceremony by virtue of the authority vested in him by a certain paper held in his hand. This evidence was hearsay. It was proving the contents of something written or printed. The license itself would not have been admissible without proof of its authority and of the authority of the purported justice of the peace to solemnize the rites of matrimony. Then surely a declaration concerning its contents would not be admissible. Neither would evidence that he had abandoned his second wife be admissible. The offense is complete at the time the ceremony is performed, and the further reprehensible conduct of the party charged is not legal and competent evidence. To hold that, while the testimony does not even tend to establish the offense, yet because of the likelihood of its increas-

ing appellant's punishment it is admissible, would be equivalent to saying that the State could prove that the defendant was cruel to his second wife or that he had abandoned her and was cruel to the child. All of which, while having no bearing on the crime, would inflame the minds of the jury.

This character of testimony is illegal, irrelevant and immaterial, and exceedingly unfair; and it is not only calculated but sure to injure the defendant's cause before the jury.

*Rob't A. John,* Assistant Attorney-General, for the State.—The court charged the jury: "In trials for the offense of bigamy, proof of marriage by mere reputation shall not be sufficient, but a former valid marriage may be established by parol. The proof may consist of the testimony of witnesses who were present at the ceremony and witnessed the public solemnization of the rites of matrimony between the contracting parties, and by proof of reputation, cohabitation, and admissions." This charge is correct, and fully presents how the jury were to determine the validity of the first marriage.

There is no necessity to define a marriage. The word has a common and universal meaning. While regulated by civil law, its meaning is based on natural laws. There is no more necessity of defining the same than to define the word "husband," "wife," "father," or "mother." The American and English Encyclopedia of Law defines a marriage to be the "legal status or condition of husband and wife, just as infancy is the legal status or condition of persons under age." 2 Am. and Eng. Enc. of Law, p. 470. The meaning is clear. The statute of this State, article 344, defining bigamy, when speaking of a person marrying another, when he has a former wife or husband living, clearly means a husband or wife of a marriage, although the same may be voidable; or in other words, subject to dissolution by the courts. A void marriage is no marriage at all. The word "void" marriage is a paradox within itself. Stewart on Marr. and Div., chap 11. There is no more necessity to define a "valid marriage" than to define the word "son" or "daughter," or "legitimate son" or "legitimate daughter." It is a matter of common knowledge that a legitimate son is one born in wedlock. If the technical definition of the first marriage is to be defined, why then the words in the statute, "who shall marry another," or the definition of the second marriage should be also defined? If it be a marriage as is commonly understood it is sufficient in both instances; its validity or technical compliance with the forms regulating its solemnity has nothing to do with either. The first marriage is no marriage if void; if not void, it is a marriage sufficient to support bigamy. State v. Barefield, 2 Rich. (S. C.), 209. And as to the second marriage it may be between parties forbidden to marry, yet the crime is complete. People v. Brown, 22 Am. Rep., 531.

The charge of the court, by telling the jury what proof was sufficient to establish the first valid legal marriage, sufficiently defined the same.

Dumas v. State, 14 Texas Crim. App., 472; Simon v. State, 31 Texas Crim. Rep., 202; 2 Greenl. on Ev., sec. 460.

As to the third assignment and bill, the State submits that generally the rules as to hearsay evidence do not apply to marriage. What was said and done, the manner of the ceremony performed, is legitimate inquiry. Whart. Cr. Ev., secs. 170, 234. Therefore it is submitted that a declaration of the justice of the peace declaring appellant and his first wife man and wife, in his presence, is admissible.

As to appellant's fourth asignment, the State submits that if cohabitation and the birth of children—the evidence of cohabitation—is evidence of the first marriage, why is not cohabitation and the birth of children the evidence of the second marriage? There are no cases in point in this State, but the case of the State v. Jenkins, 41 Southwestern Reporter, 220 (a Misouri case), sustains the proof of birth of children as evidence of marriage. While it is admitted that the crime was complete upon the consummation of the second marriage, still, proof of cohabitation with the second wife and the birth of children during said cohabitation are circumstances going to show the second marriage, and was therefore admissible.

BROOKS, JUDGE.—Appellant.was convicted of bigamy, and his punishment assessed at five years confinement in the State penitentiary.

Appellant's first bill of exceptions complains of the failure of the court to give the following special charge: "In order to warrant a conviction in this case, the evidence must establish in your minds, beyond a reasonable doubt, the existence of the fact of the first valid marriage. A valid marriage is one which has been solemnized according to the mode and manner, and in accordance with the prerequisites, which the law of the place where solemnized has required." And in bill number 2 he complains of the failure of the court to give the following charge: "A valid marriage is one which has been solemnized according to the mode and manner, and in accordance with the prerequisites, which the law of the place where solemnized has required." We will consider these two bills together. Appellant cites Dumas v. State, 14 Texas Criminal Appeals, 472, in support of his contention, and a portion of that opinion does seem to do so; but, construing the opinion as a whole, we do not think the authority supports the position of appellant. We quote the following from the opinion of the court in that case, which we think settles the controversy against appellant's contention, to wit: "It appears to us to be well settled from these authorities that general reputation, cohabitation, and admissions or confessions of the party are all admissible evidence of the fact of the first marriage. General reputation alone is insufficient, but, taken in connection with cohabitation and admission, is competent evidence to establish a prima facie case sufficient to sustain a verdict and judgment of conviction for bigamy. Whenever such evidence establishes in the minds of the jury, beyond a reasonable doubt, the existence of the fact of valid first marriage, then it is sufficient in that regard to sustain a

verdict and judgment for bigamy. But, as stated in the outset of this opinion, a valid marriage must be proven, and, if such evidence is relied upon, it must establish the existence of a valid marriage to the satisfaction of the jury, beyond a reasonable doubt." Again, in the case of Holder v. State, 35 Texas Criminal Reports, 23, the following language is used: "Upon the trial he proved that said Roberts was not an ordained minister of the gospel at the time he performed the marriage ceremony. This fact being established, he contends this marriage was a nullity, and therefore his second marriage was legal; hence, he was not guilty of adultery in living with the woman to whom he was married in 1892. The fact that Roberts was not an ordained minister does not render the first marriage a nullity. Simon v. State, 31 Texas Crim. Rep., 186; Foster v. State, 31 Texas Crim. Rep., 409. * * * Justice Strong, for the Supreme Court of the United States, quoting Greenleaf on Evidence, says: 'Though in most, if not all, the United States, there are statutes regulating the celebration of marriage rites and inflicting penalties on all who disobey the regulations, yet it is generally considered that in the absence of any positive statute declaring that all marriages not celebrated in the prescribed manner shall be void, or that none but certain magistrates or ministers shall solemnize a marriage, any marriage, regularly made according to the common law, without observing the statute regulations, would still be a valid marriage.' Meister v. Moore, 96 U. S., 76, 80. Such statutes are merely directory. Marriage is a civil contract, and is a thing of common right,—so recognized by all civilized countries in all ages,— and is encouraged by public policy. A rule of construction as contended for by appellant would bastardize children whose parents believed they were legally married, and who were not conscious of violating any law, human or divine, and who believed that they had entered into the marital relation without coming in conflict with the provisions of statutory enactments. * * * We can not agree to such a rule of construction. Our statute does not render null, or prescribe penalties against, marriages not entered into under the terms thereof. This view was entertained, and so held, by the Court of Civil Appeals, at Dallas, in a recent able and exhaustive opinion delivered by Lightfoot, C. J., in the case of Ingersol v. McWillie (Texas Civil Appeals) 30 Southwestern Reporter, 56." We therefore do not think the court erred in failing to give either of such charges complained of in his bills of exception.

Appellant's third bill of exception is as follows: "The State offered to prove by the witness A. M. Nabors declarations made by the justice of the peace while performing the alleged first marriage ceremony between defendant and his alleged first wife, in Morgan County, Alabama. Defendant objected to said testimony for the reasons that the declaration made by the justice of the peace at that time was hearsay, and because there was no competent evidence that the purported justice of the peace, whose name was Ryan, was in fact a justice of the peace of that State, county, and precinct, nor that the justice of the

peace in that State had any authority to solemnize the rites of matrimony or perform a marriage ceremony, and was therefore illegal evidence. The court overruled the objection of defendant, and permitted the witness to testify that the said justice of the peace in performing the ceremony stated that he did so by virtue of the authority vested in him by a certain paper held in his hand, the contents of which, and the authority of which, were unknown to the witness," etc. The court appends the following explanation to this bill: "That the witness Nabors had stated without objection that Ryan was justice of the peace of the precinct in which the marriage was consummated, and it further appeared from the evidence that the declarations of the justice were made in the hearing of, and in the presence of, the defendant; and with this explanation this bill is approved," etc. In the case of Simon v. State, 31 Texas Criminal Reports, 186, on the question of proving a valid marriage in criminal law, we find the following language: "All that can be required in any case involving marriage is proof of a valid marriage, for the violation of which the parties thereto may be punished. Whatever be the form of the ceremony, or if there be no ceremony, if the parties agree presently to take each other for husband and wife, and from that time on live professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage, binding on the parties, which would subject them to legal penalties for a disregard of its obligations." We do not think it necessary to review this question further. The authorities clearly authorize the admission of the testimony complained of by appellant, especially in view of the explanation of the judge to the bill of exceptions, wherein he says that the declaration of the justice of the peace was made in the presence of the defendant, and the witness was purporting to detail the circumstances and facts under which appellant and his former wife were married.

In his fourth bill appellant urges as error the action of the court permitting the witness E. G. Glasson to state the number of children born to appellant and Ludie Glasson, the alleged second wife of defendant. In State v. Jenkins (Missouri), 41 Southwestern Reporter, 220, the court sustained the lower court in permitting proof of the birth of children as evidence of marriage. We think that it was proper for the court to permit such proof in this case. We do not see how it could or did injure the rights of appellant. After a careful examination of the record before us, we find no error in the same, and the judgment is affirmed.

*Affirmed.*