## IN THE MATTER OF THE APPLICATION OF CHOW CHIU FOR A WRIT OF HABEAS CORPUS IN BEHALF OF WONG SHE.

### February 16, 1914.

1. *Immigration—Fairness of hearing before officers:* The conduct of a hearing may be fair, but as a trial is incomplete until there is a decision, it may be unfair if the decision is not based on the evidence.

2. *Evidence—Testimony of collateral facts as affecting testimony of facts germane to the issue:* Slight inaccuracies of testimony as to collateral facts cannot be used to evade conclusions necessarily arising from testimony of facts germane to the issue.

3. *Marriage, proof of:* Proof of agreement of parties to take each other as husband and wife, followed by continuous cohabitation as such, sufficient. *Meister v. Moore*, 96 U. S. 76, 82.

*Habeas Corpus:* Demurrer to petition.

*Andrews & Quarles* for petitioner.
*Jeff McCarn*, U. S. District Attorney, for respondent.

Dole, J.  The petitioner, an American citizen, applied for a writ of habeas corpus for the discharge of Wong She, a woman whom he alleges to be his wife.  He complains that the hearing before the inspector in charge was not a fair hearing, in that the evidence showing the marriage of the petitioner to the said Wong She was ignored and no weight given it.  They both recently arrived in Honolulu and Wong She was refused admittance to the United States and ordered to be deported upon the ground that she is a Chinese woman not satisfactorily shown to be the wife of the petitioner.  An order to show cause was made and the respondent demurred orally to the petition on the ground that it is alleged therein that the immigration authorities ignored and gave no weight to the evidence adduced during the proceedings before them, in support of the marriage of the petitioner with the said Wong She, contending that the point made would, if considered, cause the court to weigh the evidence taken before the immigration authorities, as on an appeal.

[1] This raises the question whether the immigration authorities have given the claim of Wong She to be admitted a fair trial.  I find that, so far as the conduct of the proceedings is concerned, the hearing has been reasonably fair.  A trial, however, is not complete without a decision; and a decision on the merits, as must be the case here, must be based upon the evidence and the law applicable to the case.  The following is the decision of the inspector in charge:

"This case has been re-opened and additional testimony taken and documentary evidence submitted.

I have given careful consideration to the entire record. Chow Chiu has been admitted as a citizen.

In the case of Wong She there is no marriage certificate. The woman is of unusual age for a new Chinese wife. Chow Chiu admits he lived for years in illicit relations with another woman and had children by her.  Wong She and Chow Chiu show by their own testimony that they cannot

be depended upon to tell the truth. There are disagreements, contradictions and discrepancies, numerous and evident and of such a character that I am not satisfied that Wong She is the wife of Chow Chiu, a citizen, and I am of the opinion that she is not. There has been a failure to prove that Wong She is a Chinese person having a status entitling her to land, she is therefore, and hereby, denied a landing in the United States and ordered deported to the country whence she came."

[2] The testimony taken from the record of the hearing shows that both Chow Chiu and Wong She testified that they were married at Lung Tow Wan, at the residence of the parents of Chow Chiu, by Chinese estimate in 1912, on the 8th day of the 8th month; that they lived there as man and wife until the time they left to come to Hawaii. There are no disagreements, contradictions or discrepancies of any importance in their testimony,—nothing to raise a suspicion as to their veracity or good faith. Chow Chiu had two children, boys, by an Hawaiian woman in Hawaii. They were in China at the time of the alleged marriage, living at the house of Chow Chiu's parents and attending school and lodging at the school, at least part of the time. Wong She at first disclaimed any knowledge of any children of her husband, but when asked if she knew whether he had children in China named Chow Chock and Chow Kee, replied, "Yes, he had three children in China," but said she didn't know their names, and that they slept and had their meals at the house where she was staying. It appeared that besides them there was a younger boy, an adopted son of Chow Chiu's brother, who she had supposed was also one of her husband's sons. It appears also from Chow Chiu's testimony that when they left China to come here his children were staying at his parents' house. There is nothing here to suggest duplicity or want of reliability as to the point at issue.

There is a divergence between the testimony of Chow Chiu and that of Chow King Ng, alias Chow Kum Cheong.

Chow Chiu said that a man named How In lived in a house opposite his father's house in front. Chow King said that *he* lived in that house and that How lived in a house across the street in the rear of the house of Chow Chiu's father. This does not weaken the veracity of Chow Chiu; it does not touch his good faith; at the most it is inaccuracy of memory on a matter not in issue that he may never have especially noticed. Chow Chiu said that Chow Min Sing lived in the house to the right of his father's house; Chow King said the person who lived in the house to the right was Chow Chung Sin. Both of these statements may be true inasmuch as Chow King arrived in China four months or more after Chow Chiu, and people change their residence sometimes.

The statement of the persons interested in regard to the marriage of Chow Chiu and Wong She, is supported, as follows: A letter dated 15th day of 9th month C. R. I. (1912) received by Lee Chuck in October 1912, from Chow Chiu, which refers to his marriage on the 8th day of the previous month, at which he states Lee Chuck's daughter was present; that he will take his family to Hawaii next autumn; asks Lee Chuck's assistance in getting two tickets for their return, and mentions enclosing pictures of himself and "wife." Lee Chuck, who says he has known Chow Chiu since he was born, says he knows he went to China to get married and that "I do not think he is a man who would bring someone who is not his wife." Chow King, the witness already referred to, says he knows Wong She is the wife of Chow Chiu because she was living in the house opposite his at Lung Tow Wan after her marriage with Chow Chiu; that he went to China in the 12th month 1912, and returned to Honolulu on the same ship with them. He and Wong She recognized each other at the hearing. The witness Yong Yin Yun, alias Yong Choy Bun, says he came to Honolulu six months ago and while in China visited the house where petitioner and Wong

She were living and that petitioner told him that they had been married in the 8th month of the year before. He also saw Chow Chiu's parents there. He identified Wong She but she did not recognize him. It is admitted that H. Hackfeld & Company, by letter of August 1st, 1913, requested its agents in Hong Kong to furnish passage to Chow Chiu and wife to Honolulu, and that in compliance therewith such passage was furnished as shown by letter of October 21st, 1913.

[3] The Supreme Court of the United States has, in the case of *Meister v. Moore,* 96 U. S. 76, 82, laid down the rule of evidence sufficient to prove marriage, as follows:

"Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other as husband and wife, and from that time lived together professedly in that relation, proof of those facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to legal penalties for a disregard of its obligations."

The evidence in this case shows agreement to take each other as husband and wife, a living together thereafter professedly in that relation, and long continued recognition by others as husband and wife. If there is no reason to doubt this evidence, and the record shows none, the fact that a certificate of marriage was not produced by the parties, but reported by them as existing elsewhere, is immaterial.

In the case of *Tang Tung v. Edsell,* 223 U. S. 673, 681-682, in which Tang Tun and his wife had been refused admission into the United States, and had applied for a writ of habeas corpus, it was claimed for the applicants that their evidence before the inspector in charge who had denied them admission "was of such an indisputable character that their rejection argues the denial of the fair hearing and consideration of the case to which they were enti-

tled." This contention was examined by the Supreme Court carefully analyzing the evidence and reaching the conclusion that the point was not supported, saying, "The record fails to show that their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law, and this being so, the merits of the case were not open to judicial examination." The court's analysis of the evidence showed clearly that the inspector in charge had some basis for his denial of the admission of the applicants. The action of the court also shows that it was ready to consider the testimony on the question of the jurisdiction of the courts. The present case presents none of the features of the evidence in that case supporting the conclusion that the court was without jurisdiction.

Another feature of the case is some uncertainty as to the grave of Chow Chiu's Hawaiian mistress or wife. He says she died during his absence in California. The witness, Hee Leong, an acquaintance of Chow Chiu, testifies as to the death and burial of an Hawaiian woman, eight or ten years ago, who he says was the wife of Chow Chiu, and to a visit to the cemetery where he pointed out her grave, at the head of which was a wooden slab inscribed in Chinese letters, the translation of which is "Chinese girl, Ah Chut, Wong She, graveyard, 1911, died Nov. 10," and the number 21. This matter was further investigated by one of the inspectors who looked up the burial records of the Board of Health, and failed to find any death on Nov. 10, 1911, reported, but did find the record of the death on November 13, 1911, of one Ah Chut at 12 months of age, whose parents were Wong Hee and Ko She. Although the inspector in charge does not refer to this uncertainty as casting a doubt as to the alleged death of the Hawaiian woman, the district attorney contends that it is a material element for consideration. The witness Hee Leong testifies to an acquaintance with Chow Chiu and his Hawaiian family,

the birth of their two children, who, he says, had gone to China, and that she died eight or ten years ago. Eight years ago would fix her death in 1905 which would be about the time of Chow Chiu's departure for California, or just after, which would, if correct, throw out of the case the above testimony as to the date on the head board of the grave in Manoa. The departure of the children for China after Chow Chiu's return from California tends to support the testimony as to her death, although it does not prove it. Although the evidence of the death of the Hawaiian woman may have given the immigration officers some ground for doubting it, the fact remains that Chow Chiu testifies that he was not married to the mother of his children, and Lee Chuck, who says that he has known Chow Chiu ever since he was born and gives the place of his birth at Waikiki, near Queen Emma's yard, says that he never had any other wife than Wong She. There is no evidence against these statements except that of Hee Leong, who speaks of the Hawaiian woman who was buried in Manoa as "the wife of Chong Chiu." This expression—the words of the interpreter—standing alone without further questioning in view of the testimony of Chow Chiu and Lee Chuck, has no bearing on the case other than testimony that she was Chow Chiu's woman.

I am of the opinion that the inspector in charge acted arbitrarily in refusing admission to the applicant's wife in the present case, and that the contention of the petitioner that he ignored the evidence in so ruling is substantially correct. It was not an abuse of discretion, but it may perhaps be described as an unconscious or unintended abuse of authority.

The demurrer is overruled.

June 8, 1914.

(On Re-hearing)

This case having been heard, a decision was filed on the 16th day of February, no brief having been filed by the respondent, the court having received the impression, in some way, that the respondent did not intend to file a brief. After the decision was filed, District Attorney McCarn, for the respondent, expressed a desire to put in a brief and the court agreed to consider the same and make such supplementary decision as might be called for. On the 5th of June the brief of respondent was filed. I have carefully examined it and find no reason to modify the decision of February 16th.

[1] [2] The evidence of the marriage of the petitioner and Wong She, in whose behalf the petition for habeas corpus was filed, is convincing and should have been convincing to the immigration authorities, there being no opposing testimony, either as to the marriage or as to the fact that they lived together and held themselves out to their friends and acquaintances as man and wife. This continued for a considerable period, up to the time they left China for Hawaii. The petitioner was a citizen of the United States, he having been born in Hawaii and having spent his life there. To refuse recognition of his alleged wife and refuse her an opportunity to join her husband, thereby separating husband and wife or compelling him to break up his home in Hawaii and return to China, would create a hardship which can only be regarded as a wrong to them, and is unjustified unless there had appeared in the case a preponderance of evidence against the marriage, or an element of unreliability in the evidence for it, which would have made it most difficult to accept the theory of the marriage. No such condition appears. The weight of evidence is all the other way.

As to the women with whom petitioner had previously cohabited in Hawaii and who had borne him two children, the evidence is that they were not married and also that she had died some years before. No evidence appears in the case, either that they had married or that she was still living at the time of the alleged marriage of petitioner and Wong She. The evidence on record showing uncertainty in regard to her burial place is negligible, either to prove her dead or alive.

I still feel that the petitioner and Wong She did not receive at the hearing before the immigration authorities a fair trial, and affirm the previous decision overruling the demurrer.