IN THE MATTER OF THE VALIDATION
OF MARRIAGE OF:

SHIRLEY KETCHUM AND FRANCIS KETCHUM

SHIRLEY KETCHUM

Petitioner-Appellant

Decided On October 15, 1979

Leonard Tuchawena, D.N.A., Tuba City, Arizona, and Tom Tso, D.N.A., Window Rock, Arizona, for Petitioner-Appellant

Before McCABE, Acting Chief Justice, BECENTI and WILSON, Associate Justices

McCABE, Acting Chief Justice

I.

On April 2, 1979, the appellant Shirley Ketchum filed a petition for Validation of Marriage between herself and Francis Ketchum with the Tuba City District Court. The petition alleged that Shirley and Francis were married in Kayenta, Arizona, by a traditional marriage on June 7, 1974, that two children were born of the marriage and that they lived together as man and wife until Francis' death on February 8, 1979.

The apparent reason the appellant filed the petition was because the Social Security Administration refused to pay any claim without documentation of the Ketchums' marriage.

On June 20, 1979, the Tuba City District Court entered an order denying the validation of marriage. The Court noted the opinion

-102-

in <u>In Re Daw</u>, 1 Nav.R. 1 (1969) but held that the Appeals' Court decision in that case was contradictory to 9 N.T.C. 62. That provision of the Navajo Tribal Code requires that any parties claiming to be married in a traditional manner must have been wed in such a manner prior to January 31, 1954 for the Court to be allowed to validate the marriage. The Tuba City District Court therefore held Title 9 of the Tribal Code implied that a marriage license was required for a valid marriage to exist after that date.

The effect of the Court of Appeals decision in the <u>Daw</u> case has been that all marriages where a traditional ceremony has been proven have been validated.

This appeal was filed on July 20, 1979.

II.

The issue before this Court is: May the Courts of the Navajo Nation validate traditional marriages occurring after January 31, 1954?

III.

Appellant's arguments confuse the issues of validation of marriage and common law marriage.

When the Navajo Tribal Code refers to validation of mar-

riage, it is referring to a court procedure for recognizing a marriage contracted in a traditional manner. According to 9 N.T.C. 62(c), the effect of a validation of marriage by a court is to have it recorded on the Tribal census rolls and to have a certificate of marriage issued.

Despite the wording of the Daw opinion, this Court believes that the Navajo Tribal Council has directed the Courts of the Navajo Nation not to validate any custom marriages occurring after January 31, 1954.

The Court in the Daw case was apparently confused as to what the effect of its refusal to validate the marriage might be. The Court incorrectly assumed that its failure to validate the Daws' marriage would mean they were not married. This would not have been the case as the Daws would have had a common law marriage.

Therefore, this Court specifically overrules the Daw opinion in-so-far as it allows for a validation of a custom marriage by a court after January 31, 1954.

This Court does recognize the validity of common law marriage. The reason common law marriage will be upheld is because common law marriage has been said to exist absent a statute to the contrary. See Meister v. Moore, 96 U.S. 76, 24 L.Ed. 826 (1878).

While the provisions of Title 9 of the Navajo Tribal Code concerning marriage are directatory and not mandatory, this merely

means that common law marriage may be recognized or that a defect in a ceremony will not affect the validity of an otherwise proper marriage. See State v. Brem, 51 N.M. 63, 178 P.2d 582 (1947).

The essential features of a common law marriage are present consent to be husband and wife, actual cohabitation and an actual holding out to the community to be married. Kelly v. Metropolitan Life Insurance Company, 352 F.Supp. 270 (D.C. N.Y., 1972).

A marriage is presumed valid and the party attacking the marriage bears the burden of proof of establishing that no marriage in fact exists. Panzer v. Panzer, 87 N.M. 29, 528 P.2d 888 (1974) and In Re Duncan's Death, 83 Idaho 254, 360 P.2d 987 (1961).

Thus, any marriage contracted by tribal custom after January 31, 1954 may not be validated by the tribal court but is recognized as a common law marriage. Any party contesting the validity of the common law marriage will bear the burden of proof of showing its invalidity.

IV.

For the reasons stated in Part III above, the decision of the Tuba City District Court is affirmed.

In Re Daw, 1 Nav.R. 1 (1969) is overruled in-so-far as it

allows the Courts of the Navajo Nation to validate traditional marriages occurring after January 31, 1954.

WILSON, Associate Justice, concurs.

BECENTI, Associate Justice, concurring in the result

I concur in the result reached by my colleagues in Part IV above, but I would not go so far as to uphold common law marriage.

I believe that the effect of 9 N.T.C. 62 is also to nullify common law marriages. The reference to January 31, 1954 in the Code seems to me to be the very words of nullity required in Meister v. Moore, 96 U.S. 76, 24 L.Ed. 826 (1878).

I wish to express my concern that some definitive action be taken on these kind of marriage questions by our legislative branch - the Navajo Tribal Council. Otherwise, the Court is left with laws that have proven to be unsuitable for our people. The only way to correct these kind of laws absent Council action is for this Court to act as a super-legislature. We have in the past expressed our reluctance to act in such a manner absent a violation of the Indian Civil Rights Act. See Keeswood, et al. v. The Navajo Tribe, et al., 2 Nav.R. 46 at 55 (1979).

For the reasons stated above, I concur with the results reached in the majority opinion.