In re the MARRIAGE OF
J.M.H., Appellee,

and

Willis ROUSE, Appellant,

and

Concerning Weld County Department
of Human Services, Petitioner–
Appellee.

No. 04CA0740.

Colorado Court of Appeals,
Div. III.

June 15, 2006.

Rehearing Denied Aug. 10, 2006.

No Appearance for Appellee.

Willis Rouse, Pro Se.

Bruce T. Barker, County Attorney, Jim L. Pope, Assistant County Attorney, Greeley, Colorado, for Petitioner–Appellee.

Opinion by Judge TAUBMAN.

Willis Rouse appeals from the judgment declaring invalid his April 2003 attempted marriage to J.M.H. We reverse and remand.

According to Rouse, he and J.M.H. began living together in April 2002. In April 2003, when J.M.H. was fifteen years old, they applied for a marriage license in Adams County. Rouse also asserts that, although J.M.H. was subject to a dependency and neglect proceeding brought by the Weld County Department of Human Services, she had become emancipated.

J.M.H.'s mother offered her signed and notarized consent to the marriage, and accompanied Rouse and J.M.H. to the county clerk's office to obtain a marriage license. The deputy clerk approved the application and forwarded it to the county clerk for registration. The county clerk also approved the application and mailed it back to Rouse and J.M.H., stating that they were fully registered as a legally married couple as of April 28, 2003.

In February 2004, the Department filed a petition to declare the marriage invalid, asserting that J.M.H. was fifteen, that the application was not approved by a parent, that the Department had custody of J.M.H., that Rouse was incarcerated and awaiting trial on a charge of sexual assault on a child, and that he was serving a sentence for escape and parole violation.

Rouse responded by asserting that he and J.M.H. were legally married at common law and, in the alternative, that they had a valid ceremonial marriage because they had obtained a marriage license in Adams County.

The trial court granted the petition, after a hearing at which Rouse appeared by telephone from the county jail. The court held that a person under the age of sixteen must obtain judicial approval for a valid common law or ceremonial marriage. This appeal followed.

Rouse contends that the trial court erred in holding that a person under the age of sixteen must seek judicial approval to be married, even if that marriage is at common law. We agree.

Initially, we note that J.M.H. is now over the age of eighteen. Nevertheless, the Department asserts that the validity of her marriage is not moot because she is still the subject of a dependency and neglect petition before the Weld County District Court.

The Uniform Marriage Act (UMA), § 14–2–101, et seq., C.R.S.2005, sets forth the rules and requirements for ceremonial marriages in Colorado. The UMA reflects the legislative purposes of strengthening and preserving the integrity of marriage and safeguarding meaningful family relationships. Section 14–2–102, C.R.S.2005. The act provides procedures for the solemnization and registration of marriages. *See* § 14–2–104, C.R.S.2005 (formalities); § 14–2–105, C.R.S. 2005 (marriage license and certificate); § 14–2–108, C.R.S.2005 (judicial approval); § 14–2–110, C.R.S.2005 (prohibited marriages).

The UMA provides that "[n]othing in this section shall be deemed to repeal or render invalid any otherwise valid common law marriage between one man and one woman." Section 14–2–104(3), C.R.S.2005.

The statutory age of consent for marriage in Colorado is eighteen. Section 14–2–106(1)(a)(I), C.R.S.2005. Nevertheless, persons between sixteen and eighteen years of age may marry if they obtain parental consent, or, if that is not possible, judicial approval. Section 14–2–108.

Section 14–2–108(1), C.R.S.2005, states that:

> The juvenile court . . . after a reasonable effort has been made to notify the parents or guardian of each underaged party, may order the county clerk and recorder to issue a marriage license and a marriage certificate form . . . [t]o a party aged sixteen or seventeen years who has no parent or guardian, or who has no parent capable of consenting to his [or her] marriage, or whose parent or guardian has not consented to his [or her] marriage. . . .

Section 14–2–108(1)(b), C.R.S.2005, states that a person under the age of sixteen may receive judicial approval to marry if that person "has the consent to his or her marriage of both parents, if capable of giving consent, or his or her guardian or, if the parents are not living together, the parent who has legal custody or decision-making responsibility concerning such matters or with whom the child is living." *See also* § 14–2–106(1)(a)(I) (marriage license issued upon showing satisfactory proof of judicial or parental approval as required by § 14–2–108).

Colorado is also one of several states, along with the District of Columbia, that still recognize common law marriages. Sonya C. Garza, *Common Law Marriage: A Proposal for the Revival of a Dying Doctrine*, 40 New Eng. L.Rev. 541, 545 (2006). The jurisdictions that recognized common law marriage are Alabama, Colorado, District of Columbia, Idaho, Iowa, Kansas, Montana, Rhode Island, South Carolina, Texas, and Utah. Garza, *supra*, at 545 n. 27. However, Pennsylvania recently decided not to recognize common law marriages allegedly contracted after January 1, 2005. 23 Pa. Cons.Stat. § 1103.

■ Common law, not the UMA, governs the existence of a common law marriage. *See People v. Lucero,* 747 P.2d 660 (Colo. 1987); *In re Marriage of Phelps,* 74 P.3d 506 (Colo.App.2003). Essentially, in a common law marriage, two persons create a valid marital relationship without the benefit of a legal marriage ceremony performed according to statutory requirements. Denise K. Mills, *Common Law Marriage in Colorado,* 16 Colo. Law. 252 (Feb.1987).

■ Colorado appellate courts have not determined the age of consent for a valid common law marriage. Thus, for guidance, we look to the origins of common law in Colorado and decisions from other jurisdictions discussing the age of consent for common law marriage.

"The common law of England so far as the same is applicable and of a general nature ... shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." Section 2–4–211, C.R.S.2005; *see Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223, 226 n. 4 (Colo.1994); *see also Wagner v. Hilkey,* 914 P.2d 460 (Colo.App.1995)(except to extent it is repealed either expressly or by passage of inconsistent legislation, common law of England prevails in Colorado), *aff'd sub nom. Wagner v. Bd. of County Comm'rs,* 933 P.2d 1311 (Colo.1997).

■ Although courts acknowledge and respect the General Assembly's authority to modify or abrogate common law, such changes will not be recognized unless they are clearly expressed. *Vigil v. Franklin,* 103 P.3d 322 (Colo.2004). Therefore, absent clear legislative intent, the common law prevails in any conflict with statutory law. *Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70 (Colo.1998).

■ Similarly, the United States Supreme Court has held that common law marriages are valid, notwithstanding statutes that require ceremonial marriages to be solemnized by a minister or a magistrate, if no specific provision to the contrary exists. *Meister v. Moore,* 96 U.S. 76, 24 L.Ed. 826 (1877). As the Court explained, "No doubt, a statute may take away a common-law right; but

there is always a presumption that the legislature has no such intention, unless it be plainly expressed." *Meister v. Moore, supra,* 96 U.S. at 79. The Court contrasted the Michigan statute at issue with statutes in North Carolina and Tennessee, which specified that all marriages solemnized without the parties' obtaining a marriage license beforehand were null and void.

The *Meister* Court cited with approval *Parton v. Hervey,* 67 Mass. (1 Gray) 119 (1854), in which the court held valid and binding a marriage of a girl only thirteen years old, married without parental consent, notwithstanding a statute prohibiting clergymen and magistrates from solemnizing a marriage of females under the age of eighteen without the consent of parents or guardians. The *Meister* Court continued:

> But, in the absence of any provision declaring marriages not celebrated in a prescribed manner, *or between parties of certain ages,* absolutely void, it is held that all marriages regularly made according to the common law are valid and binding, though had in violation of the specific regulations imposed by statute.

*Meister v. Moore, supra,* 96 U.S. at 80. (Emphasis added; quoting *Parton v. Hervey, supra.*]

Other jurisdictions have followed this approach, holding that, if common law marriage is to be abolished, or the requirements for entering into it changed, this modification must be made by the legislature, not the courts. *See, e.g., In re Miller,* 301 Pa.Super. 511, 448 A.2d 25 (1982). Furthermore, an act that does not refer to common law marriages specifically cannot be presumed to abrogate or modify the common law in this respect. *Buradus v. Gen. Cement Prods. Co.,* 356 Pa. 349, 52 A.2d 205, 208 (1947).

Similarly, statutes prescribing the procurement of a license and other formalities to be observed in the solemnization of a marriage do not render invalid a marriage entered into according to the common law, but not in conformity with the statutory formalities, unless the statutes themselves expressly declare such a marriage invalid. *State v. Ward,* 204 S.C. 210, 28 S.E.2d 785 (1944); *see also*

*Adams v. Boan,* 559 So.2d 1084, 1087 (Ala.1990)(statute requiring person under the age of eighteen to acquire consent of parents before marriage not applicable to common law marriage in action for distribution of marital property).

Regarding the age of consent for common law marriage specifically, courts in other jurisdictions have uniformly declared that the common law age of consent applies to common law marriages, even when statutes otherwise require parental or judicial approval for persons under a specified age, unless those statutes expressly modify or abrogate the common law. These cases have arisen in a variety of contexts. *See Adams v. Boan, supra* (distribution of marital property); *State v. Sedlack,* 246 Kan. 305, 787 P.2d 709 (1990) (sexual abuse); *State v. Wade,* 244 Kan. 136, 766 P.2d 811 (1989)(same); *State v. Johnson,* 216 Kan. 445, 532 P.2d 1325 (1975) (invocation of marital privilege to bar testimony), *disapproved of on other grounds by State v. Lee,* 266 Kan. 804, 977 P.2d 263 (1999); *State v. Ward, supra* (statutory rape); *Buradus v. Gen. Cement Prods. Co., supra* (compensation under a workers' compensation act); *In re Miller, supra* (petition to declare juvenile a dependent child).

The common law marriage of a person is valid, regardless of whether the person has reached the age of competency as established by statute, if the person is competent under the common law. *State v. Ward, supra* 28 S.E.2d at 786–87; *see also* In *re Miller, supra* 448 A.2d at 25 n. 6 (statutory age requirement not applicable to common law marriages in action to declare juvenile a dependent child).

Under English common law, children below the age of seven were incapable of marrying. After that age they could marry, but the marriage was voidable until they became able to consummate it, which the law presumed to be at age fourteen for males and twelve for females. 1 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 2.1 (2d ed.1987). Accordingly, several jurisdictions have adopted those ages as the common law ages of consent for marriage. *See State v. Sedlack, supra; State v. Ward, supra; see also* Mary D. Feighny,

*Common Law Marriage: Civil Contract or "Carnal Commerce,"* 70 J. Kan. B.A. 20 (2001) (discussing Kansas cases and acknowledging age of consent for common law marriage in that state to be fourteen for a male and twelve for a female).

■ Here, we conclude the trial court erroneously held that persons under the age of sixteen may not enter into a valid common law marriage without judicial approval. As mentioned above, common law marriages in Colorado and other jurisdictions are governed by the common law, not statutes, unless the statutes evince an express legislative intent to abrogate or modify the common law. *See* § 14-2-104(3).

The trial court stated that it would not recognize Rouse's marriage to J.M.H. without judicial approval because this recognition would frustrate the intent of § 14–2–108, which requires a court to find that an under-aged party is capable of assuming the responsibilities of marriage and that entering into a marriage would serve that person's best interests. Consequently, the trial court ruled that Rouse's marriage to J.M.H. was invalid ab initio, pursuant to § 14–10–111(1)(c), C.R.S.2005, of the Uniform Dissolution of Marriage Act (UDMA). That section states, in relevant part, that "[t]he district court shall enter its decree declaring the invalidity of a marriage entered into under the following circumstances: ... [a] party was under the age as provided by law and did not have the consent of his [or her] parents or guardian or judicial approval as provided by law."

However, neither § 14–2–108, § 14–10–111(1)(c), nor any other provision of the UMA or UDMA makes any reference, either express or implied, to (1) common law marriages in general; (2) abrogation or modification of the common law regarding the age of consent for common law marriage; or (3) the need for any formalities, such as parental consent, to solemnize a common law marriage between an adult and a minor. Furthermore, the Uniform Marriage and Divorce Act (UMDA), upon which the UDMA is substantially based, does not address these issues. *See generally In re Marriage of Wells,* 850 P.2d 694 (Colo.1993)(Colorado adopted

UDMA in 1971, substantially based on UMDA).

Thus, in the absence of a statutory provision to the contrary, it appears that Colorado has adopted the common law age of consent for marriage as fourteen for a male and twelve for a female, which existed under English common law. Nevertheless, we need only hold here that a fifteen-year-old female may enter into a valid common law marriage.

J.M.H. was fifteen when she allegedly entered into a common law marriage with Rouse. Therefore, if all other elements for common law marriage were satisfied, Rouse's marriage to J.M.H. was valid ab initio because J.M.H. was competent at common law on the date she was married. Accordingly, the trial court erred in ruling that the common law marriage was invalid on the ground that neither J.M.H. nor Rouse obtained judicial approval of the marriage.

Because we conclude that the trial court erred when it required Rouse to obtain judicial approval for his common law marriage to J.M.H., we do not address its ruling that a valid ceremonial marriage did not exist on the ground that the Adams County Clerk could not properly issue a marriage license without judicial approval.

For the reasons stated above, the trial court erroneously invalidated Rouse's marriage to J.M.H. In so deciding, the trial court did not address whether the elements necessary for establishing a common law marriage, other than the age of consent of the parties, were met.

Accordingly, we remand the case to the trial court for an evidentiary hearing to determine whether, neither party being under an age infirmity, a valid marriage was contracted between J.M.H. and Rouse at common law.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge ROY and Judge LOEB concur.