2003 OK CIV APP 65

**Harvey Leon ELLER, Petitioner,**

v.

**COUNTY OF PITTSBURG and National American Insurance, Respondents.**

**No. 97,973.**

Court of Civil Appeals of Oklahoma, Division No. 4.

March 4, 2003.

Rehearing Denied June 23, 2003.

Victor R. Owens and Daryl G. Alphin, Victor R. Owens & Associates, Tulsa, OK, for Petitioner.

Kristin Blue Fisher and L. Brad Taylor, Feldman, Franden, Woodard & Farris, Tulsa, OK, for Respondents.

Opinion by JERRY L. GOODMAN, Presiding Judge.

¶ 1 This is a proceeding to review an order of the Workers' Compensation Court awarding the claimant, among other things, benefits for permanent partial disability. The claimant contends the trial court erred as a matter of law in relying, in part, upon evidence which failed to comply with a mandatory provision of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed.1994), hereinafter, AMA *Guides.* Based upon our review of the record and applicable law, we sustain the order.

I

¶ 2 Claimant Harvey Leon Eller filed a Form 3 alleging he severely injured his back, left arm, left shoulder, neck, and both hips and legs when a chain saw he was operating "kicked back" during the course and scope of his employment as a brush cutter for employer, County of Pittsburg, Oklahoma. The employer admitted that the claimant sustained an accident as alleged, however it disputed the extent of the resulting injuries. Specifically, the employer argued that any neck and back complaints the claimant may have were secondary to ongoing symptoms related to previous injuries the claimant sustained while he was employed by another

employer. The trial court awarded the claimant benefits for temporary total disability, ordered the employer to provide the claimant with all reasonable and necessary medical care and treatment, and reserved the matter of permanent disability.

¶ 3 On August 15, 2001, the claimant underwent a cervical diskogram which involved injection of contrast material on three spinal levels. Films were then taken, which revealed degeneration, leakage with bulging disk space, internal disk derangement, and loss of height which produced radicular pain to the claimant's left arm. The claimant was diagnosed with a herniated disk at C6–C7.

¶ 4 On October 1, 2001, the claimant underwent a microdiskectomy with anterior plating and fusion at C6–C7. The procedure involved placement in the disk of bone harvested from the claimant's left hip.

¶ 5 Thereafter, on December 16, 2001, the claimant underwent a four-level lumbar diskogram. The procedure did not result in a recommendation for lumbar surgery.

¶ 6 In February 2002, the claimant filed a Form 9 motion to set for trial. He framed the issues as permanent partial disability, continuing medical maintenance, and disfigurement. The employer disputed the nature and extent of the claimant's injuries, denied that he was entitled to medical maintenance, and sought a credit for overpayment of temporary benefits.

¶ 7 The trial court held a hearing on the matter June 5, 2002. The claimant testified as to the nature of his physical ailments and stated that he had previously injured his neck and back resulting in surgical fusions. He presented the narrative report of his medical expert who stated that:

> I would apportion 30% permanent impairment due to any prior pre-existing impairment to the cervical spine giving this patient 39% permanent impairment to the whole person solely as a result of the injuries to the cervical spine sustained while working for Pittsburg County....
>
>     ....
>
> In my medical opinion and within a reasonable degree of medical certainty, I would apportion 30% permanent impairment due

to any prior pre-existing impairment to the lumbosacral back giving this patient 35% permanent impairment to the whole person solely as a result of the injuries to the lumbosacral back sustained while working for Pittsburg County....

The expert opined that the claimant had sustained 13 percent whole person impairment due to "[f]our-level awake lumbar discogram with disc injection." The expert noted the claimant's disfigurement at the bone donor site, and concluded that the claimant is "100% permanently totally disabled and economically unemployable until [*sic*] as a direct result of a combination of his injuries." The trial court overruled the employer's probative value objection to the report.

¶ 8 The employer presented the narrative report of its medical expert who concluded that the claimant had sustained work-related injuries resulting in permanent partial impairment to the whole body consisting of 16 percent to the cervical spine and 0 percent to the lumbosacral spine, left shoulder, left arm, right or left hip, or right or left leg as a result of his work-related accident. He noted that the claimant had undergone a "lumbar spine diskogram" but did not assign any impairment as a result of the procedure. He stated that the claimant's temporary disability had ended, he did not need further medical care or continuing medical maintenance, and he may return to work.

¶ 9 In an order filed June 24, 2002, the trial court awarded the claimant permanent partial disability benefits for compensable injuries to his neck, and back. The trial court found:

> [the] claimant sustained 21 percent permanent partial disability to the neck (over and above a pre-existing 18% permanent partial disability to the neck due to 1992 cervical fusion) and *5 percent permanent partial disability to the back (over and above a pre-existing 15% permanent partial disability to the back due to surgery in 1993)*, which is 26% to the body as a whole, for which claimant is entitled to compensation.... (Emphasis added.)

The court denied the claims for injuries to the left shoulder and left hip, and for con-

tinuing medical maintenance. The court granted the employer's claim for overpayment of temporary total disability benefits. The claimant seeks our review.

## II

¶ 10 The claimant contends the trial court erred as a matter of law in relying upon evidence submitted by the employer. The argument is that the opinion of the employer's expert failed to comply with mandatory provisions of the AMA *Guides.* We disagree.

¶ 11 Title 85 O.S.2001 § 3(16), states, in relevant part, that "any examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the injury." The fourth edition of the Guides was in effect when the claimant sustained his work-related injury. Table 75 provides the estimated diagnosis-related impairment percentages to be combined with the impaired range of motion and neurological deficit in evaluating a claimant. Table 75(II)(D) establishes an 8 percent whole body impairment for "[s]urgically treated disk lesion without residual signs or symptoms; *includes disk injection.*" (Emphasis added.) The claimant argues that because it is undisputed that he underwent a procedure where dye was injected into his lumbar spine, the court erred in relying upon the report of the employer's expert who noted the procedure but did not assign a corresponding impairment rating. As a result, he argues he is entitled to an additional 8 percent impairment above the 5 percent he was awarded for injury to his back.

¶ 12 The employer, on the other hand, argues that the procedure performed on the claimant's lumbar spine was not a surgical treatment of the claimant's spine, as required by Table 75(II)(D), but was a diagnostic test performed to determine whether the claimant was a candidate for surgical treatment. We agree with the employer.

¶ 13 The four-level lumbar diskogram was performed by a radiologist associated with Spine Diagnostic Group, Inc. The Procedure Note prepared by the radiologist states that during the procedure needles were inserted guided under flouroscopy. Once the needles were in position, "[d]ye was injected into each disc under direct flouroscopic visualization." During the procedure the radiologist stated that the "patient's pain response to the injection, volume of injection, endpoint of injection, morphology of the disc, and the pressure to injection were all recorded." The radiographic report contained in the note states that "AP and lateral views of the lumbar spine show needles in the nuclear region of the L1–2, L2–3, L3–4 and L4–5 discs" revealing "nuclear injection, diffuse internal disc derangement" at each disk. The radiologist noted that the "patient tolerated the procedure well with no complications."

¶ 14 The claimant's medical expert characterized the procedure and its results as follows:

> Due to the persistence of his lumbar symptomatologies, the patient was referred once again to Dr. Eckman undergoing a discogram revealing evidence of painful disc at L1 L2, L2 L3 and probable recess stenosis at L4 L5. *These findings did not result in recommendations for additional lumbar surgery.* (Emphasis added.)

The expert's report, indeed the appellate record, is devoid of any indication that the diskogram procedure was a surgical treatment as contemplated by the *Guides.* In fact, based on the results of the diskogram, no further surgical treatment of the claimant's lumbar spine was recommended and none was performed. Nonetheless, the claimant's expert recommended that 13 percent impairment be awarded based on a "[f]our-level awake lumbar discogram with disc injection."

¶ 15 We agree with the employer's conclusion that the "[c]laimant's theory that any worker who undergoes diagnostic testing on the back in the form of a diskogram would automatically be entitled to an award of PPD is clearly an unreasonable interpretation of the AMA Guides." We conclude that a reasonable interpretation of Table 75(II)(D) is that the *Guides* recommends additional impairment for the surgical treatment of a disk, including disk injection for treatment purposes, as opposed to diagnostic purposes. The claimant's interpretation could have a

chilling effect on the availability of diagnostic procedures which are necessary to evaluate a claimant's need for corrective surgical treatment.

### III

¶ 16 We hold the order under review is supported by competent evidence. The order is therefore sustained.

¶ 17 ORDER SUSTAINED.

REIF, J., and RAPP, J., concur.